OPINION *Page 2 
{¶ 1} Appellant Joseph Gonzalez appeals his felony conviction for aggravated vehicular homicide and a related misdemeanor conviction for failure to stop after an accident. Appellant presents four issues for review. He argues, in part, that the indictment for failure to stop after an accident was defective and we agree with this argument, particularly because the indictment fails to mention the mens rea element of the crime. We therefore vacate his conviction for failure to stop after an accident. The remaining alleged errors concern evidentiary issues. Appellant contends that certain photographs of the victim should not have been admitted into evidence. He claims that evidence of an alleged physical altercation at a bar should have been excluded under Evid. R. 404. Finally, he argues that the manifest weight of the evidence does not support his aggravated vehicular homicide conviction. We reject these arguments, and affirm the conviction for aggravated vehicular homicide.
 BACKGROUND OF THE CASE {¶ 2} At approximately 2:30 a.m. on March 21, 2004, Shaun Summerville and Richard Bussey were walking on the sidewalk on Wilson Avenue in Campbell, Ohio. Appellant, who was driving his brother's truck on Wilson Avenue at the time, struck and killed Mr. Summerville. Appellant did not stop at the time of the accident. Appellant's brother noticed that his truck had been damaged, and Appellant initially told him that a friend had used the truck and struck a pole. Appellant later claimed that he may have hit a dog or some other animal. After the news of Mr. Summerville's death was reported in the local media, Appellant hired an attorney and then turned himself over to the Campbell Police Department. *Page 3 
 {¶ 3} On March 25, 2004, Appellant was indicted on one count of aggravated vehicular homicide, a second degree felony, R.C. 2903.06(A)(2), and one count of failure to stop after an accident, a third degree felony, R.C. 4549.02(A). Trial began on February 7, 2006. At trial, Mr. Bussey testified that he was walking on the sidewalk on Wilson Avenue on the morning of the accident, and that Mr. Summerville was walking next to him, partly on the sidewalk and partly on the grass. They were walking in very close proximity to one another. Mr. Summerville was closer to the road. Mr. Bussey noticed a truck come from behind them. He heard a thump, and then realized that his friend, Mr. Summerville, was gone. He said the truck had swerved up onto the sidewalk, driving in between telephone poles and rocks, when it hit Mr. Summerville. When Mr. Bussey looked for his friend, he found him laying face up, showing no signs of life. He ran to a nearby house, and called his aunt to tell her that Mr. Summerville was dead. He then returned to the body and knelt down and cried. Other people began arriving at the scene, including the local police.
 {¶ 4} Appellant's brother, Jonathan Centeno, testified that he owned a red and white Ford Bronco truck. On the night prior to the accident, he left his truck and his keys at his mother's house. At approximately 3:00 a.m. on the morning of the accident, he received a phone call from Appellant concerning damage to the truck. Appellant told Mr. Centeno that a woman had used the truck and hit a pole. Appellant drove the truck back to Mr. Centeno, who noticed that the right side of the vehicle had been damaged. Appellant gave no further explanation about the damage to the truck, and Mr. Centeno went back to bed. After he awoke again that afternoon, *Page 4 
Appellant told him that he heard on the news that there was some type of accident on Wilson Avenue and that he may have hit something on Wilson Avenue, possibly a dog. Appellant then contacted his attorney.
 {¶ 5} Randall Benner, a paramedic, testified that he was called to the scene of the accident on March 21, 2004. Mr. Benner determined that the victim was dead, and had sustained a severe trauma to the head. He also noticed that one of the victim's shoes had been knocked off and was lying some distance from the body. Benner testified that an impact forceful enough to knock a person's shoe off is generally a fatal impact.
 {¶ 6} Dr. Robert Belding, a forensic pathologist, testified about the autopsy he performed on the victim. He testified that the victim sustained massive head injury, as well as numerous other abrasions, scrapes, bruises and bone fractures. He stated that virtually every organ in the victim's abdomen had been damaged, and that death had been very rapid due to the tremendous trauma to the body. The state introduced photographs into evidence supporting Dr. Belding's testimony, including an autopsy photograph of the head injury.
 {¶ 7} Campbell Police Officer Kevin Sferra testified that he was called to investigate the accident. He testified that he found pieces of debris that had broken off from the vehicle at the time of the accident. An examination of some of the debris indicated that the vehicle in question was a red and white Ford Bronco.
 {¶ 8} Ohio State Trooper Joel T. Hughes testified. Trooper Hughes was called to the scene of the accident soon after it occurred. He testified as to *Page 5 
measurements he took of the crime scene, including the exact location of the body, the victim's shoe, the roadway, the telephone poles along the road, and the tire tracks and scuff marks that were found near the body.
 {¶ 9} Appellant also testified at trial. He admitted he took his brother's truck a few hours prior to the accident and drove to a bar called Pal Joey's. He left the bar at approximately 2:00 a.m. He admitted that he may have hit something as he drove on Wilson Avenue after he left the bar. He testified that he did not stop because he panicked at the time, particularly since his license was under suspension. He stated that he turned himself into the police after he heard about the accident in the morning news.
 {¶ 10} The jury convicted Appellant of aggravated vehicular homicide, a second degree felony, and of misdemeanor failure to stop after an accident. Sentencing took place on March 13, 2006. The court sentenced him to six years in prison on count one and six months in prison on count two, to be served concurrently. The sentencing judgment entry was filed on April 5, 2006, and this timely appeal followed.
 {¶ 11} Appellant presents four assignments of error on appeal, which will be treated out of order to facilitate our analysis. *Page 6 
 ASSIGNMENT OF ERROR NO. 4 {¶ 12} "THE TRIAL COURT ERRED IN OVERRULING THE DEFENDANT'S MOTION TO DISMISS COUNT 2 (FAILURE TO STOP AFTER AN ACCIDENT) AS THE INDICTMENT CHARGING THIS OFFENSE FAILED TO STATE ALL THE ESSENTIAL ELEMENTS OF THE OFFENSE."
 {¶ 13} Appellant contends that he was never properly charged with the offense of failure to stop after an accident, and therefore, he could not have been convicted of that offense. Appellant was charged with violating R.C. 4549.02(A), which states, in pertinent part:
 {¶ 14} "(A) In case of accident to or collision with persons or property upon any of the public roads or highways, due to the driving or operation thereon of any motor vehicle, the person driving or operating the motor vehicle, having knowledge of the accident or collision, immediately shall stop the driver's or operator's motor vehicle at the scene of the accident or collision and shall remain at the scene of the accident or collision until the driver or operator has given the driver's or operator's name and address and, if the driver or operator is not the owner, the name and address of the owner of that motor vehicle, together with the registered number of that motor vehicle, to any person injured in the accident or collision or to the operator, occupant, owner, or attendant of any motor vehicle damaged in the accident or collision, or to any police officer at the scene of the accident or collision.
 {¶ 15} "In the event the injured person is unable to comprehend and record the information required to be given by this section, the other driver involved in the *Page 7 
accident or collision forthwith shall notify the nearest police authority concerning the location of the accident or collision, and the driver's name, address, and the registered number of the motor vehicle the driver was operating, and then remain at the scene of the accident or collision until a police officer arrives, unless removed from the scene by an emergency vehicle operated by a political subdivision or an ambulance."
 {¶ 16} The portion of Appellant's indictment relating to the crime of failure to stop after an accident contained the following language:
 {¶ 17} "The Jurors of the Grand Jury of the State of Ohio, within and for the body of the County of Mahoning, on their oaths, and in the name and by the authority of the State of Ohio, do find and present that on or about March 21, 2004 at Mahoning County, JOSEPH GONZALEZ did fail to stop his vehicle after an accident, said violation resulting in the death of Shaun Summerville. In violation of Section 4549.02(A)(B) of the Revised Code, a Felony of [the] Third Degree, against the peace and dignity of the State of Ohio."
 {¶ 18} Appellant contends that the language in the indictment fails to charge him with the offense described in R.C. 4549.02(A). He argues that, "if a vital and material element identifying or characterizing an offense is omitted from an indictment, the indictment is insufficient to charge an offense and cannot be remedied by the court." State v.Cimpritz (1953), 158 Ohio St. 490, 493, 110 N.E.2d 416. He contends that the indictment fails to mention any mens rea element of the *Page 8 
crime and omits other elements as well, such as whether he failed to remain at the scene or failed to provide his identifying information.
 {¶ 19} An indictment must give a defendant notice of all the elements of the offense with which the defendant is charged. Crim. R. 7(B). A criminal defendant has a constitutional right to have all elements of the crime charged stated in the indictment. State v. Shuttlesworth
(1995), 104 Ohio App.3d 281, 286, 661 N.E.2d 817. A conviction based on an indictment that fails to include all essential elements of the crime, including the element of a culpable mental state, is void for lack of subject matter jurisdiction. Cimpritz, supra, at paragraph six of the syllabus; State v. Sarver, 7th Dist. No. 05-CO-53, 2007-Ohio-0601, ¶ 12.
 {¶ 20} Appellee argues in rebuttal that R.C. 4549.02(A) does not contain a scienter element, and thus, the indictment was not faulty for this omission. Although the statute does refer to "having knowledge of the accident or collision," the state contends that this is not the same as the mens rea element that a person must "knowingly" commit the crime. Despite the use of the word "knowledge" in R.C. 4549.02(A), Appellee contends that it is a strict liability crime with no mens rea element.
 {¶ 21} We are not persuaded by this argument. R.C. 2901.21(B) sets forth the requisite test for determining whether a criminal statute is a strict-liability offense. R.C. 2901.21(B) provides:
 {¶ 22} "When the section defining an offense does not specify any degree of culpability, and plainly indicates a purpose to impose strict criminal liability for the *Page 9 
conduct described in the section, then culpability is not required for a person to be guilty of the offense."
 {¶ 23} Hence, mens rea is always a factor in a criminal conviction unless both of two requirements are met: (1) the language of the statute setting out the offense does not specify a degree of mens rea, and (2) this language on its face clearly intends to impose strict liability for the offense.
 {¶ 24} With respect to failure to stop after an accident, it does not appear that either requirement of R.C. 2901.21(B) is present when we review the statutory language setting forth this crime. First, the criminal statute does contain a mens rea element corresponding to the culpable mental state of "knowingly". R.C. 2901.22(B) defines the culpable mental state of "knowingly" as follows: "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." The second part of this definition states that "knowingly" means having "knowledge of circumstances." In order to criminally charge someone with failure to stop after an accident, then, the statute requires there be proof as to "having knowledge of" an accident. In other words, that person has acted "knowingly."
 {¶ 25} Secondly, the statutory language setting forth the crime of failure to stop after an accident does not plainly indicate a purpose to impose strict liability. The legislature's intent to impose strict liability must appear in the very words of the statute. State v.Moody, 104 Ohio St.3d 244, 2004-Ohio-6395, 819 N.E.2d 268, ¶ 16. *Page 10 
The mere use of the word "shall" in the criminal offense is not an indicator that it is a strict-liability crime. Id. There is nothing in R.C. 4549.02 that clearly indicates strict liability, and thus, it should not be treated as imposing strict liability.
 {¶ 26} Appellee also argues that Appellant failed to object to any error in the indictment prior to trial, and has therefore waived any right to have the language of the indictment reviewed on appeal. Although errors in the indictment generally must be made prior to trial, there are exceptions, as noted by Crim. R. 12(C)(2):
 {¶ 27} "(C) Pretrial motions. Prior to trial, any party may raise by motion any defense, objection, evidentiary issue, or request that is capable of determination without the trial of the general issue. The following must be raised before trial:
 {¶ 28} "* * *
 {¶ 29} "(2) Defenses and objections based on defects in the indictment, information, or complaint (other than failure to showjurisdiction in the court or to charge an offense, which objections shall be noticed by the court at any time during the pendency of the proceeding);" (Emphasis added.)
 {¶ 30} Appellant's argument on appeal is that the indictment fails to charge an offense because certain essential elements of the crime were omitted, including the scienter element. Appellant raised this objection to his indictment after the state had concluded presenting its evidence. This qualifies as an objection raised "at any time during the pendency of the proceeding" and refutes Appellee's waiver argument. Furthermore, the Ohio Supreme Court has very recently ruled that, "[w]hen an indictment fails to charge a mens rea element of a crime and the defendant fails to *Page 11 
raise that defect in the trial court, the defendant has not waived the defect in the indictment." State v. Colon, N.E.2d, 2008-Ohio-1624, syllabus.
 {¶ 31} Because the indictment failed to include at least one essential element, the scienter, and Appellant is permitted to raise this issue on direct appeal even without objection to the trial court, we sustain this assignment of error and vacate the conviction for failure to stop after an accident. We also dismiss this count in the indictment.
 ASSIGNMENT OF ERROR NO. 1 {¶ 32} "THE TRIAL COURT ERRED IN ADMITTING STATE'S EXHIBITS 4, 5 AND 6 AS EACH CONSTITUTED HIGHLY INFLAMMATORY AND GRUESOME PHOTOGRAPHS OF THE DECEDENT THAT WERE NOT RELEVANT AND, EVEN IF RELEVANT, THE PREJUDICIAL EFFECT OF SAID PHOTOGRAPHS OUTWEIGHED ANY PROBATIVE VALUE."
 {¶ 33} Appellant objected at trial to the admission of three photographs of the victim, Mr. Summerville, taken immediately prior to his autopsy. One photograph that shows an extensive injury to the victim's head is undeniably gruesome. The other two photographs portray the front of the victim's face and a lengthwise view of his body, fully clothed, prior to the autopsy. Appellant contends that these photographs were irrelevant to any issues in dispute at trial, and were highly prejudicial and inflammatory, particularly the photograph of the head injury.
 {¶ 34} Decisions on the admissibility of photographs are "left to the sound discretion of the trial court." State v. Slagle (1992),65 Ohio St.3d 597, 601, *Page 12 605 N.E.2d 916. The test for exclusion of evidence under Evid. R. 403 is that relevant evidence, including photographic evidence, should only be excluded when, "its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury." A photo should not be excluded from evidence simply because it is gruesome. State v. Maurer (1984), 15 Ohio St.3d 239, 265,473 N.E.2d 768. The Ohio Supreme Court has held that: "Properly authenticated photographs, even if gruesome, are admissible in a capital prosecution if relevant and of probative value in assisting the trier of fact to determine the issues or are illustrative of testimony and other evidence, as long as the danger of material prejudice to a defendant is outweighed by their probative value and the photographs are not repetitive or cumulative in number." Id. at paragraph seven of the syllabus.
 {¶ 35} We disagree with Appellant that the photographs were irrelevant or lacked any probative value. First, the photographs corroborate the testimony of the state's witnesses. The photographs particularly enhance the testimony of Dr. Belding, who conducted the autopsy. Dr. Belding went into great detail about the extreme force of the impact and the extensive damage done to the victim's head, neck, spine, torso, and virtually every organ below the victim's chest. The impact was so severe that it separated the bones of the victim's skull. Dr. Belding concluded that the injury to the victim's neck, severing his spinal column, was the immediate cause of death. The photo of the head injury is corroborative evidence that the collision was so violent, particularly to the victim's head, that it very likely snapped his spinal column. *Page 13 
 {¶ 36} The photograph of the severe head injury also corroborates the evidence indicating how the crash occurred. This evidence helped establish Appellant's mens rea in this case. In order for Appellant to be convicted of aggravated vehicular homicide, the state had to prove that Appellant acted with the mens rea of, at least, recklessness. Recklessness is defined in R.C. 2901.22(C): "A person acts recklessly when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, he perversely disregards a known risk that such circumstances are likely to exist."
 {¶ 37} The state attempted to prove recklessness, in part, by showing that Appellant swerved off the road beyond the grassy area next to the road that was lined with telephone poles, and then continued to swerve all the way onto the sidewalk where the victim and Mr. Bussey were walking. Various other aspects of the evidence show that Appellant left the roadway driving at a high rate of speed. For example, Mr. Bussey described the moment of impact as occurring so fast that he did not see it happen. He only heard a swishing sound and a thump, and then realized his friend was no longer walking next to him. Other evidence reveals that the victim's body was found a long distance from the point of impact, approximately 150 feet away. The photo of the severe head injury tends to corroborate this testimony by showing that Appellant was, in fact, driving in such a manner and at such speed so as to cause massive injuries to the victim's head. This information *Page 14 
helps establish that Appellant acted at least recklessly in steering his car off the road, up onto the sidewalk, late at night, at a considerable speed, when he hit the victim with the Ford Bronco truck.
 {¶ 38} We do not know what the actual speed limit was on the road where Appellant was driving, but driving faster than the speed limit is not the only indication of recklessness. Appellant testified that it was snowing at the time of the accident and it was very late at night. The state's evidence indicates that Appellant swerved far off the road. He was driving fast enough to injure practically every internal organ in the victim's body. The impact was so hard that one of the victim's shoes was knocked far away from where the victim was found, which the record indicates is usually a sign of a fatal accident. In this context, the photograph of the head injury indicates that Appellant was driving fast enough to cause massive damage to the victim's skull and brain, thus underscoring the other evidence of recklessness.
 {¶ 39} Appellant contends that he did not dispute the manner in which the victim died, and thus, the victim's injuries were not relevant. Our review of the record does not reflect that Appellant admitted any material fact prior to trial or during the state's presentation of its case in chief. Once the state was finished presenting its case, Appellant took the stand and testified that he was driving the Ford Bronco truck in the area where Shaun Summerville was killed on the night of the crime. He did not admit that he hit Mr. Summerville. He testified that he may have hit a dog; he only remembered that he felt a thump while he was driving. He also tried to establish that the damage to the truck may not have been caused by whatever it was that he may *Page 15 
have hit on Wilson Avenue. Instead, he claimed that his woman friend ran into a metal pole as she was driving out of a parking lot that night, causing the damage. Further, he denied that he swerved or left the roadway where the accident occurred. It appears from the record that Appellant contested most of the circumstances of the crime. Thus, the state could not allow any aspect of the crime to go unchallenged, including the exact cause of death.
 {¶ 40} The trial court did not abuse its discretion in allowing the photographs to be admitted, and we therefore overrule Appellant's first assignment of error.
 ASSIGNMENT OF ERROR NO. 2 {¶ 41} "THE TRIAL COURT ERRED IN PERMITTING THE STATE TO INTRODUCE OTHER ACTS EVIDENCE."
 {¶ 42} Appellant contends that the state introduced evidence of "prior bad acts" in violation of Evid. R. 404(B), which prohibits the admission of, "[e]vidence of other crimes, wrongs, or acts," if used to show that a person has a bad character or acted in conformity with that bad character. The rule also provides a non-exclusive list of exceptions in which "prior bad acts" evidence is admissible, e.g., to prove someone's motive, to intent, to establish someone's identity, or to show that certain events did not occur by accident or mistake. A more extensive list of exceptions is codified in R.C. 2945.59. The trial court's determination as to the admissibility of "prior bad acts" evidence is reviewed for abuse of discretion: in other words, whether the trial court acted unreasonably, arbitrarily, or unconscionably. State v.Conway, 109 Ohio St.3d 412, 2006-Ohio-810, 848 N.E.2d 810, ¶ 62. *Page 16 
 {¶ 43} The evidence in dispute regards comments by Mr. Bussey about a fight between Appellant and the victim which occurred at some time prior to the fatal collision. The record does not support Appellant's interpretation as to the manner in which Mr. Bussey's comments were introduced into evidence, or the content of that evidence. During the state's direct examination of Mr. Bussey, there was no mention of any fight. Without discussing anything about prior crimes or bad acts, Mr. Bussey testified vaguely that he had his own suspicions about who killed his friend, Mr. Summerville. The prosecutor questioned Mr. Bussey as follows on direct examination:
 {¶ 44} "Q Do you remember later that day and over the next couple of days you had several conversations with the Campbell Police Department?
 {¶ 45} "A Yes. I knew beforehand. I had my suspicions.
 {¶ 46} "Q Okay. Well, all right. You had your suspicions of what?
 {¶ 47} "A That I knew — I knew who it was." (Tr., p. 253.)
 {¶ 48} Mr. Bussey said nothing else about his suspicions at this time, and Appellant's counsel did not object to this testimony on any grounds. There is nothing in this dialogue that refers to a prior crime or bad act. Mr. Bussey simply stated, without giving any particular details, that he suspected someone. He did not even state that he suspected Appellant.
 {¶ 49} On cross-examination, Appellant's counsel further questioned Mr. Bussey about his suspicions: *Page 17 
 {¶ 50} "Q And didn't you tell us today that right after the accident you had suspicions?
 {¶ 51} "A I knew. I didn't know right on, but I knew — yeah, I knew, you might as well say that, yeah."
 {¶ 52} "Q Well, you didn't write down any of those suspicions on that statement, did you?
 {¶ 53} "A No." (Tr., p. 277.)
 {¶ 54} Appellant's counsel then asked a series of questions in order to challenge Mr. Bussey's credibility concerning how many times he had seen the Ford Bronco truck prior to trial. Mr. Bussey testified on direct examination that he had seen the truck at the time the crime occurred and then later at the Campbell Police Station garage. Appellant's counsel attempted to have Mr. Bussey admit that he did not actually see the truck prior to the time he identified it at the police garage. (Tr., p. 278 ff.) Mr. Bussey, though, during cross-examination, stated that he had also seen the truck on Wilson Avenue prior to the accident.
 {¶ 55} During redirect examination, the prosecutor asked a number of questions clarifying Mr. Bussey's suspicions and elaborating as to when he saw the truck prior to the night of the crime:
 {¶ 56} "Q Now, you talked about, when you were being questioned, that you knew who it was.
 {¶ 57} "A I had my suspicions.
 {¶ 58} "Q What were your suspicions? *Page 18 
 {¶ 59} "MR. JUHASZ: Objection.
 {¶ 60} "THE COURT: Overruled.
 {¶ 61} "A I can answer that?
 {¶ 62} "Q Yes.
 {¶ 63} "A Well, there was a fight prior to that before it happened, and I recognized — I recognized the Blazer.
 {¶ 64} "Q And what was your suspicions as to who it was?
 {¶ 65} "MR. JUHASZ: Objection.
 {¶ 66} "THE COURT: Overruled. You opened the door.
 {¶ 67} "A Its was Joseph.
 {¶ 68} "Q Joseph who?
 {¶ 69} "A Gonzalez." (Tr., pp. 288-289.)
 {¶ 70} It is difficult to even characterize any of this testimony as referring to character evidence or prior bad acts of Appellant. Mr. Bussey did not identify who was involved in the fight, who instigated it, whether it was a verbal or a physical altercation, or any other relevant fact about the alleged fight. Mr. Bussey also referred to a "Blazer" rather than a Ford Bronco, and it is not clear what vehicle he had in mind or how it relates to Appellant.
 {¶ 71} Even if we can assume that this testimony relates to a prior fight between Appellant and the victim, such testimony would tend to establish a motive for the crime, and evidence of motive is a well-established exception to the rule excluding prior bad acts evidence. As Evid. R. 404(B) states: "Evidence of other *Page 19 
crimes, wrongs, or acts * * * may, however, be admissible for other purposes, such as proof of motive * * *." Motive, being the mental state that induces one to act, is relevant to most criminal trials in that it helps corroborate that certain acts took place because a person had a reason to act in a certain manner. State v. Nichols (1996),116 Ohio App.3d 759, 764, 689 N.E.2d 98.
 {¶ 72} Finally, the trial judge is correct that Appellant's counsel opened the door to the testimony about the prior fight by challenging whether Mr. Bussey had actually entertained any suspicions about who killed his friend, and by trying to get Mr. Bussey to testify that he had never seen the Ford Bronco truck prior to his identification of it at the police station. Appellant's counsel did not object when Mr. Bussey discussed his suspicions, and in fact, furthered that discussion. The prosecutor's subsequent questions to Mr. Bussey on redirect examination seem to be nothing more than an attempt to rebut some of the questioning done during cross-examination. Once a party opens the door to a subject, the trial court has wide latitude in allowing the opposing party to cross-examine the witness on the same subject matter. Sims v.Dibler, 172 Ohio App.3d 486, 2007-Ohio-3035, 875 N.E.2d 965, ¶ 34.
 {¶ 73} Appellant's argument is not supported by the record, and there was no abuse of discretion in allowing Mr. Bussey to testify about a prior fight involving Appellant. This assignment of error is overruled. *Page 20 
 ASSIGNMENT OF ERROR NO. 3 {¶ 74} "THE JURY'S VERDICT AS TO COUNT 1 OF THE INDICTMENT (AGGRAVATED VEHICULAR HOMICIDE) IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND MUST BE REVERSED AS A MATTER OF LAW."
 {¶ 75} Appellant contends that the state's evidence, particularly the testimony of Mr. Bussey, was not credible and that weight of the evidence did not establish the elements of the crime of aggravated vehicular homicide. The weight of the evidence is a question about the persuasiveness: "a reviewing court asks whose evidence is more persuasive-the state's or the defendant's?" State v. Wilson,113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 25. The manifest weight of the evidence standard in a criminal case was explained in State v.Thompkins (1997), 78 Ohio St.3d 380, 678 N.E.2d 541:
 {¶ 76} "`The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.'" Id. at 387, quoting State v. Martin (1983),20 Ohio App.3d 172, 175, 20 OBR 215, 485 N.E.2d 717.
 {¶ 77} Although the credibility of witnesses is a factor in reviewing the manifest weight of the evidence, a reviewing court must also keep in mind that the credibility of *Page 21 
the witnesses is primarily determined by the trier of fact. State v.DeHass (1967), 10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212, paragraph one of the syllabus. The cold, hard pages of the printed record do not lend themselves well to testing the credibility of the witnesses.
 {¶ 78} Appellant was charged with aggravated vehicular homicide under R.C. 2903.06(A)(2) and (B)(3). The state was required to prove that Appellant recklessly caused the death of another while operating a motor vehicle, and in order to increase the degree of the crime to a second degree felony, the state also had to prove that Appellant's license was suspended at the time. Appellant contends that the state did not prove recklessness. The record indicates that Summerville and Bussey were walking behind a row of telephone poles away from the paved portion of the road. Mr. Bussey was on the sidewalk, and Mr. Summerville was either on the sidewalk, or partly on the sidewalk and partly on the grassy area between the sidewalk and the road. The vehicle that hit Mr. Summerville swerved around a telephone pole, then continued swerving over the grassy area and onto the sidewalk. The vehicle then swerved back again onto the road, avoiding another telephone pole. There was also evidence establishing the severity of the impact, the distance the body was thrown and the considerable damage to the vehicle. These facts were established by various aspects of the evidence, not only from the testimony of Mr. Bussey. There is nothing incredible about Mr. Bussey's testimony in light of all the evidence presented, particularly the testimony of Trooper Hughes. Therefore, the manifest weight of the evidence supports the jury's verdict, and we hereby overrule this assignment of error. *Page 22 
 {¶ 79} In conclusion, we sustain Appellant's fourth assignment of error due to the deficiencies in count two of the indictment. Appellant's conviction and sentence for failure to stop after an accident are vacated, and the count is dismissed. We overrule Appellant's remaining assignments of error. We discern no error in the admission of autopsy photographs of the victim, or in the admission of certain comments by Mr. Bussey concerning a fight that Appellant may been involved in. We also conclude that the manifest weight of the evidence supports the guilty verdict for aggravated vehicular homicide, and we hereby affirm the conviction and the sentence for count one in the indictment. Appellant's prison term will not be reduced by our decision because the 6-month prison term for failure to stop after an accident was to be served concurrently with the 6-year prison term for aggravated vehicular homicide. Although we have vacated the 6-month prison term from count 2 in the indictment, Appellant will continue to serve the remainder of his 6-year prison term pursuant to count 1.
Vukovich, J., concurs.
DeGenaro, P.J., concurs in part and dissents in part; see concurring in part and dissenting in part opinion. *Page 23