[Cite as *State v. Taylor*, 2010-Ohio-1551.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | ) | CASE NO. 08 MA 122 |
| | ) | |
| PLAINTIFF-APPELLEE | ) | |
| | ) | |
| VS. | ) | OPINION |
| | ) | |
| EDWARD TAYLOR | ) | |
| | ) | |
| DEFENDANT-APPELLANT | ) | |

CHARACTER OF PROCEEDINGS:     Criminal Appeal from the Court of
Common Pleas of Mahoning County,
Ohio
Case No. 08 CR 78

JUDGMENT:     Affirmed.

APPEARANCES:
For Plaintiff-Appellee:     Atty. Paul J. Gains
Mahoning County Prosecutor
Atty. Ralph M. Rivera
Assistant Prosecuting Attorney
21 West Boardman Street, 6th Floor
Youngstown, Ohio  44503

For Defendant-Appellant:     Atty. Timothy Young
Ohio Public Defender
Atty. Melissa M. Prendergast
Assistant Ohio Public Defender
Office of the Ohio Public Defender
250 East Broad Street, Suite 1400
Columbus, Ohio  43215

JUDGES:
Hon. Cheryl L. Waite
Hon. Gene Donofrio
Hon. Mary DeGenaro

Dated:  March 29, 2010

WAITE, J.

**{¶1}** Appellant, Edward Taylor, appeals his jury conviction in the Mahoning County Court of Common Pleas on two counts of felonious assault, in violation of R.C. 2903.11(A)(2), (D), felonies of the first degree, with accompanying firearms specifications, pursuant to R.C. 2941.145(A). Appellant was sentenced to eight-year prison terms on each count of felonious assault to be served concurrently. The trial court merged the firearms specifications and imposed a consecutive three-year sentence, for an aggregate sentence of eleven years in prison.

**{¶2}** Appellant's estranged wife, Carolene Taylor, was a passenger in an automobile driven by her boyfriend, Daniel Boggs, on November 6, 2007. (Tr., p. 137.) Carolene and Boggs were going to pick up her sixteen-year-old son, Evan Taylor, at a friend's house. Evan is also Appellant's son. (Tr., pp. 138, 189.) As Evan walked toward the back seat on the driver's side of the car, a white car appeared and pulled up alongside Boggs' car. (Tr., p. 169.) All three of them heard one of the passengers in the white car call to Evan to get out of the way. (Tr., pp. 139, 167, 191.) Evan ran to the front of the car and Carolene ducked and jumped out of the car. (Tr., p. 139.) A single gunshot was fired, and then the white car sped away. (Tr., p. 138.) Boggs gave chase and ultimately rear-ended the white vehicle. (Tr., p. 170.) The collision disabled Boggs' car.

**{¶3}** A bullet hole was found in the driver's side headrest of Boggs' car, and a spent bullet was found on the front passenger floorboard underneath the dashboard. (Tr., pp. 211-212.) The back driver's side window was shattered. At the

scene, Carolene identified Appellant as the gunman, (Tr., p. 140), and both Boggs and Evan identified the voice they heard that evening as Appellant's voice. (Tr., pp. 171, 191.) However, Evan later testified on cross-examination that he was not certain that the voice he heard was Appellant's. (Tr., p. 199.)

{¶4} A warrant for Appellant's arrest was issued on November 7, 2007, but he was not arrested until January 10, 2008. Officer Mark Gillette testified that he attempted to arrest Appellant at 23 East Auburndale (the address on the warrant) on November 7, 2007, but Appellant was not at the address. (Tr., p. 254.) Gillette left a card containing his contact information with the owner of the residence in the event that Appellant returned.

{¶5} Gillette further testified that he received information about Appellant's whereabouts at the East Auburndale address on January 10, 2008, and that he, approximately six to eight members of the Violent Crimes Task Force, and a K-9 unit responded to the location. (Tr., pp. 254-256.) Gillette knocked on the door and commanded that Appellant exit the residence, however, Appellant did not comply. (Tr., pp. 257-258.)

{¶6} With the owner's permission, the task force entered the residence with the K-9 unit and announced their presence. (Tr., p. 259.) The dog alerted on a closet door in a rear section of the house. (Tr., p. 260.) Gillette commanded Appellant to exit the closet. Again, he did not comply. (Tr., p. 261.) The dog was allowed to enter the closet and started to remove clothes from a pile on the floor, revealing "some legs and some shoes." (Tr., p. 261.) Appellant continued to ignore Gillette's commands to exit the closet, so the officers pulled him out of the closet by

his legs. The state relied upon the foregoing facts as evidence of Appellant's attempt to evade arrest and of his consciousness of guilt.

{¶7}   Based on a 1994 decision from this Court, Appellant contends that the trial court erred when it admitted evidence of his efforts to avoid arrest because those events occurred several months after he committed the crimes. He further contends that the trial court erred when it included a flight instruction in the jury charge.

{¶8}   While it is true that this Court has written, in dicta, that the effort to avoid arrest must occur at a time and place near the criminal activity, the Ohio Supreme Court has more recently held that admissibility of evidence of flight does not depend upon the amount of time that passes between the offense and the defendant's flight. Therefore, Appellant's assignments of error are overruled, and his conviction is affirmed.

### ASSIGNMENT OF ERROR I

{¶9}   "The trial court erred when it admitted, over defense counsel's objection, evidence of Mr. Taylor's flight, in violation of Evidence Rule 403 depriving Mr. Taylor of his right to due process and a fair trial under the Fourteenth Amendment to the United States Constitution, and Section 10, Article I of the Ohio Constitution."

{¶10}  Evid.R. 402 states that relevant evidence is generally admissible, but that "[e]vidence which is not relevant is not admissible." " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evid.R. 401.

**{¶11}** However, even relevant evidence can be inadmissible, "if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury." Evid.R. 403(A). A trial court's decision on both the relevance and admissibility of that evidence under Evid.R. 403(A) is reviewed for an abuse of discretion. *State v. Gonzalez*, 7th Dist. No. 06MA58, 2008-Ohio-2749, ¶82. The phrase "abuse of discretion" implies that the trial court's attitude, as evidenced by its decision, was unreasonable, arbitrary, or unconscionable. *State v. Busch* (1996), 76 Ohio St.3d 613, 616, 669 N.E.2d 1125.

**{¶12}** Since 1969, in the State of Ohio the fact of an accused's flight, escape from custody, resistance to arrest, concealment, assumption of a false name, and other related conduct have been admissible as evidence of consciousness of guilt, and of guilt itself. *State v. Eaton* (1969), 19 Ohio St.2d 145, 160, 249 N.E.2d 897, vacated on other grounds (1972), 408 U.S. 935, 92 S.Ct. 2857, 33 L.Ed.2d 750, quoting 2 Wigmore, Evidence (3 Ed.) 111, Section 276; holding reaffirmed in *State v. Williams* (1997), 79 Ohio St.3d 1, 11, 679 N.E.2d 646.

**{¶13}** However, Appellant cites our decision in *State v. Tubbs* (February 25, 1994), 7th Dist. No. 92 C.A. 45, for the proposition that "[e]ven if appellant engaged in the conduct set out in *Eaton*, such activity at a removed geographic location and removed point in time cannot support an inference of guilt." Id. at *5. In *Tubbs*, the appellant challenged the flight instruction given to the jury, however, he failed to include the actual instruction in the record on appeal. Consequently, the assignment of error challenging the flight instruction was overruled.

{¶14} However, the panel in *Tubbs* went on to discuss some of the erstwhile merits of this assignment, for its "instructive" value. Id. at *5. In *Tubbs*, the police arrested the defendant five weeks after the alleged crime in an entirely separate location in the city of Youngstown. The Court wrote, in dicta, that, "[e]ven if appellant engaged in the conduct set out in *Eaton*, such activity at a removed geographic location and removed point in time cannot support an inference of guilt. As such, instructions on flight should be limited to situations when the activities associated with flight occur at a time and place near the criminal activity for which defendant is on trial." Id. While not having an actual transcript of the instruction before the Court, the panel ultimately concluded that, while giving any flight instruction under this fact scenario would be error, an instruction given on this issue would constitute harmless error in *Tubbs* based upon other testimony that was properly on the record and before the Court.

{¶15} In *State v. Hand*, 107 Ohio St.3d 378, 2006-Ohio-18, 840 N.E.2d 151, the Ohio Supreme Court adopted a broad interpretation of the flight rule announced in *Eaton*, supra, albeit in the context of a motion to sever escape charges. In *Hand*, the defendant moved to sever the charges in the original indictment from escape charges that were added after his failed prison escape.

{¶16} The Ohio Supreme Court reasoned that Hand suffered no prejudice as a result of the joinder of charges because his participation in the escape attempt, "was evidence of flight and was admissible as tending to show his consciousness of guilt." Id. at ¶167. Hand argued that joinder was not justified, because more than nine months elapsed between the murders and his escape attempt. The Supreme

Court cited an Eighth District case, however, and held that "admissibility of evidence of flight does not depend upon how much time passes between the offense and the defendant's flight." Id. at ¶169, citing with favor *State v. Alexander* (Feb. 26, 1987), Cuyahoga App. No. 51784, 1987 WL 7079, *2.

**{¶17}** *Alexander*, supra, the Eighth District favorably relied on by the Supreme Court, did not involve a prison escape. In fact, *Alexander* is more closely analogous to the case at bar. In *Alexander*, the defendant argued that because six months had passed between the offense and his flight to Nevada, the evidence of his flight had little probative value. In rejecting this argument, the Eighth Appellate District held that admissibility of evidence of flight was not contingent upon how much time passes between the offense and the defendant's flight. Id. at *5. In *Hand*, the Supreme Court adopted the reasoning of the Eight District in *Alexander* that "flight on the eve of trial can carry the same inference of guilt as flight from the scene." Id. at ¶169, *Alexander* at 2. Thus, any dicta to the contrary in our earlier case has been overruled by the Supreme Court.

**{¶18}** In addition to his misplaced reliance on *Tubbs*, infra, Appellant in this case also argues that he was not aware that the police were pursuing him. Therefore, his conduct cannot be considered as evidence of consciousness of guilt. Appellant's premise is belied by his own mother, who testified at trial that she told Appellant to surrender to the police when she discovered that the police were looking for him. (Tr., p. 314.)

**{¶19}** Assuming arguendo that evidence regarding the manner of Appellant's apprehension should not have been admitted at trial, admission of the evidence of

flight would, at best, constitute harmless error. There was testimony submitted at trial indicative of Appellant's guilty. Carolene identified Appellant as the gunman, and both Boggs and Evan stated that, although they did not see the gunman, they recognized the voice of the man who called to Evan as Appellant's.

**{¶20}** In an attempt to present an alibi, Appellant offered the testimony of his mother and a friend, who both testified that Appellant was attending a birthday party at the time the crimes were committed. (Tr., pp. 292-294, 305-307.) However, neither witness could explain why they did not contact the police prior to trial, when they were aware that their testimony would provide an alibi to the felonious assault charges. (Tr., pp. 296, 300, 308.)

**{¶21}** Nevertheless, based upon the Ohio Supreme Court's broad interpretation of the rule announced in *Eaton*, supra, the admission of the testimony regarding Appellant's efforts to avoid arrest was not an abuse of discretion. Further, there was sufficient evidence of Appellant's guilt such that Appellant was not prejudiced as a result of the admission of the flight evidence. Therefore, Appellant's first assignment of error is overruled.

## ASSIGNMENT OF ERROR II

**{¶22}** "The trial court erred when it gave an instruction on flight, over defense counsel's objection, depriving Mr. Taylor of his right to due process and a fair trial under the Fourteenth Amendment to the United States Constitution, and Section 10, Article I of the Ohio Constitution."

**{¶23}** The jury charge as regards this issue states, in pertinent part:

{¶24} "In this case there was evidence that the defendant fled from the vicinity of the crime immediately following the alleged felonious assault of Carolene Taylor and Daniel Boggs and that he subsequently hid in a closet. You are instructed that this conduct alone does not raise a presumption of guilt, but it may tend to indicate the defendant's consciousness of guilt. If you find that the facts do not support that the defendant fled the scene or hid in a closet, or if you find that some other motive prompted the defendant's conduct, or if you are unable to decide what the defendant's motivation was, then you should not consider this evidence for any purpose. However, if you find that the facts support that the defendant engaged in such conduct, and if you decide that the defendant was motivated by a consciousness of guilt, you may, but are not required, to consider that evidence in deciding whether the defendant is guilty of the offenses charged. You alone will determine what weight, if any, to give to this evidence." (Tr., pp. 379-380.) The jury instruction parrots the language of 4 Ohio Jury Instructions (2005) Section 409.13.

{¶25} A flight instruction is treated as part of the overall jury instructions and is reviewed in the context of the entire jury instructions. *State v. Price* (1979), 60 Ohio St.2d 136, 14 O.O.3d 379, 398 N.E.2d 772, paragraph four of the syllabus. A trial court is required to give the jury all instructions that are relevant and necessary for the jury to weigh the evidence and fulfill its duty as factfinder. *State v. Comen* (1990), 50 Ohio St.3d 206, 210, 553 N.E.2d 640.

{¶26} When a timely objection has been made to the jury instructions pursuant to Crim.R. 30, a reviewing court will not reverse the trial court's decision not

to give a requested jury instruction or to the charge actually given absent an abuse of discretion. *State v. Wolons* (1989), 44 Ohio St.3d 64, 68, 541 N .E.2d 443.

**{¶27}** Because we have concluded that the trial court did not err when it admitted the flight evidence, the flight instruction was both "relevant and necessary for the jury to weigh the evidence." See *Comen*, supra, at 210. Moreover, the jury charge on flight properly instructed the jury that it may reject the flight evidence altogether in the event that they concluded that Appellant's motivation was something other than an effort to avoid arrest. In other words, the instruction allowed the jury to accept Appellant's argument that he hid in the closet out of fear of the situation, rather than to avoid capture. See *State v. Brown*, 1st Dist. Nos. C-080320, C-080321, 2009-Ohio-1889, ¶20. Therefore, the trial court did not abuse its discretion when it instructed the jury on flight.

**{¶28}** Based upon the Supreme Court's opinion in *Hand*, supra, both of Appellant's assignments of error are overruled, and his conviction is affirmed.

Donofrio, J., concurs.

DeGenaro, J., concurs.