SIMS, Appellant,

v.

DIBLER, Appellee.

[Cite as *Sims v. Dibler*, 172 Ohio App.3d 486, 2007-Ohio-3035.]

Court of Appeals of Ohio,
Seventh District, Jefferson County.

No. 05 JE 53.

Decided June 13, 2007.

488

Jason A. Cuomo, for appellant.

Krugliak, Wilkins, Griffiths & Dougherty Co., L.P.A., Matthew P. Mullen, and Owen J. Rarric, for appellee.

WAITE, Judge.

{¶ 1} This appeal involves a jury verdict in favor of the defendant in a personal injury case. Appellant, Kevin Sims, was involved in an automobile accident with appellee, Tiffany Dibler, in 2002. Appellee admitted that she caused the automobile accident. Trial was held in the Jefferson County Court of Common Pleas on the issue of proximate cause of appellant's spinal injury and on damages. It was revealed at trial that appellant had reported no injuries at the scene and drove himself home after the accident. Appellant's treatment consisted of one emergency room visit and two visits to a doctor in the next six months. Appellant had an extensive prior history of back injuries, including back surgery and a related workers' compensation claim for permanent partial disability. Appellant argues on appeal that the workers' compensation claim should not have been introduced at trial, even though the workers' compensation claim goes to the heart of appellant's alleged injury. Appellant's own doctors testified about the prior workers' compensation claim and relied on the results of that claim to form their opinions. Appellant also argues that the trial judge should have sustained a motion for a new trial, but a review of the record clearly supports the jury verdict. Appellant's evidence at trial could not pinpoint when appellant's spinal disc had herniated, and there were indications of a bulging disc dating back to 1994. Appellee's counsel also established numerous credibility problems with appellant's testimony, and it was primarily his testimony that was used to prove proximate cause and damages. There is substantial evidence to support the jury verdict, and thus, the trial court was within its discretion to overrule the motion for a new trial. The judgment of the trial court is affirmed.

## FACTS AND PROCEDURAL HISTORY

{¶ 2} Appellant was rear-ended by appellee on August 5, 2002. The accident occurred when appellant was driving home from work. He slowed down near the scene of a previous accident, when appellee struck his car and pushed it into the car in front of him on the roadway. Appellant was traveling at approximately five m.p.h. at the time of the accident. Appellant did not tell the police at the scene of the accident that he was hurt. Appellant did not report any pain at the time of the accident. After he drove home, he testified that his back began to hurt, and he went to the hospital. He was given pain relievers and no other treatment. He rested during two scheduled days off from work and then returned to work. He testified that he saw Dr. Schreiber in late September, approximately eight weeks after the accident, and that Dr. Schreiber sent him to a chiropractor, Dr. MacPherson. Appellant underwent an MRI and was sent to a neurosurgeon, Dr. Baker, who recommended surgery. The surgery took place on January 7, 2004.

{¶ 3} Appellant filed his complaint on July 30, 2004. On September 20, 2005, appellant took a videotaped deposition of Dr. MacPherson. On September 22, 2005, appellant took a videotaped deposition of Dr. Baker. Both of these depositions were used at trial.

{¶ 4} On September 20, 2005, appellant filed a motion in limine attempting to preclude appellee from introducing any evidence of a prior workers' compensation claim or a prior social security claim. In the motion appellant concedes that "the fact that he was injured [in] the same area previously might be relevant." Appellant argued, though, that any reference to workers' compensation or social security would be irrelevant, particularly any reference to any conclusions relating to whether appellant was partially or totally disabled. Appellee responded to the motion on September 27, 2005, and the court overruled appellant's motion in limine on September 30, 2005.

{¶ 5} On September 27, 2005, appellant filed objections to certain items on appellee's proposed list of evidence to be introduced at trial. Appellant objected to the introduction of medical records that contained references to workers' compensation or social security claims. The trial court overruled these objections because they were filed late, although it did order that references to insurance be redacted from appellee's exhibits at trial.

{¶ 6} At trial it was revealed that appellant suffered a back injury at work in 1989, resulting in surgery in 1991 to remove the L5–S1 disc in his back (referring to the disc between the fifth lumbar vertebra and first sacral vertebra). Appellant was injured again at work in 1993. He had a chronic condition that entire period and suffered from back pain from 1989 until the time of the 2002 accident and beyond. Medical reports from 1995 and 1997 stated that appellant had back pain in L5–S1 and L4–L5 region (referring to the spinal discs between the fourth and fifth lumbar vertebrae, as well as between the fifth lumbar vertebra and first sacral vertebra). Reports also indicated that even five years after the first accident appellant could do little work or engage in recreational activity, that he could not sit for more than 20 minutes or stand more than five minutes, and that he had chronic pain. Dr. Baker testified that after eight years of treatment, appellant's chronic lower back symptoms never improved and that appellant continued to show classic symptoms of a bulging disc, including pain radiating down the leg.

{¶ 7} The deposition testimony of the two doctors revealed that a great deal of their final opinion about the cause of appellant's current condition was based on appellant's own descriptions of his pain and the onset of that pain. This was necessarily so because there was little other evidence available with which to evaluate appellant's condition prior to the 2002 accident. Although appellant had

submitted to an MRI in 1994, no other similar diagnostic tests were done on appellant until after the 2002 accident.

{¶ 8} Appellee's counsel engaged in a very damaging cross-examination of appellant, in which numerous inconsistencies and omissions were revealed pertaining to his medical and employment history, thus calling into question his reports of his own pain over the years.

{¶ 9} The jury ruled in favor of appellee on October 5, 2005.

{¶ 10} On October 13, 2005, appellant filed a motion for judgment notwithstanding the verdict, and a motion for new trial. The court overruled the motions on October 24, 2005. This timely appeal followed.

{¶ 11} Appellant presents two assignments of error on appeal. Both assignments of error are directed at the trial court's decision to overrule appellant's motion for a new trial.

## ASSIGNMENT OF ERROR NO. 1

{¶ 12} "The trial court committed reversible error of law in overruling appellant's objections and in permitting the introduction of various references to appellant's pre-wreck workers' compensation filings, workers' compensation disability rating and social security claim filings all of which related to a different injury at appellant's L5–S1 disc."

{¶ 13} Appellant argues that the trial court should have granted a new trial because certain evidence was erroneously admitted at trial. Appellant argues that the trial court should not have allowed appellee to introduce evidence related to his prior workers' compensation and social security claims because those claims were irrelevant to the injury that allegedly occurred in 2002. Appellant contends that Evid.R. 402 prohibits the introduction of irrelevant evidence, and Evid.R. 403(A) prohibits the introduction of evidence whose probative value is substantially outweighed by the danger of unfair prejudice or that would unduly confuse or mislead the jury. Appellant submits that the trial court error was directly responsible for the verdict in appellee's favor and that a new trial should have been granted.

{¶ 14} Although appellant claims that the trial court made a pure error of law, the error alleged involves the erroneous admission of evidence. Thus, we must first determine what evidence is in dispute. Appellant presents this court with no factual details concerning the alleged evidentiary error. He fails to specify the evidence that supposedly resulted in prejudice. Appellant also fails to explain how a single evidentiary error would warrant a new trial. By failing to point to specific instances in the record that demonstrate reversible error, appellant has defeated his first assignment of error. As it states in App.R. 16(A):

{¶ 15} "Brief of the appellant. The appellant shall include in its brief, under the headings and in the order indicated, all of the following:

{¶ 16} " * * *

{¶ 17} "(6) A statement of facts relevant to the assignments of error presented for review, with appropriate references to the record in accordance with division (D) of this rule.

{¶ 18} "(7) An argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies. The argument may be preceded by a summary."

{¶ 19} Appellant also fails to indicate this court's standard of review in this appeal. This appeal is based on the trial court's failure to grant a new trial, and a request for a new trial is governed by Civ.R. 59(A):

{¶ 20} "A new trial *may be granted* to all or any of the parties and on all or part of the issues upon any of the following grounds:

{¶ 21} "(1) Irregularity in the proceedings of the court, jury, magistrate, or prevailing party, or any order of the court or magistrate, or abuse of discretion, by which an aggrieved party was prevented from having a fair trial;

{¶ 22} "(2) Misconduct of the jury or prevailing party;

{¶ 23} "(3) Accident or surprise which ordinary prudence could not have guarded against;

{¶ 24} "(4) Excessive or inadequate damages, appearing to have been given under the influence of passion or prejudice;

{¶ 25} "(5) Error in the amount of recovery, whether too large or too small, when the action is upon a contract or for the injury or detention of property;

{¶ 26} "(6) The judgment is not sustained by the weight of the evidence; however, only one new trial may be granted on the weight of the evidence in the same case;

{¶ 27} "(7) The judgment is contrary to law;

{¶ 28} "(8) Newly discovered evidence, material for the party applying, which with reasonable diligence he could not have discovered and produced at trial;

{¶ 29} "(9) Error of law occurring at the trial and brought to the attention of the trial court by the party making the application;

{¶ 30} "In addition to the above grounds, a new trial may also be granted in the sound discretion of the court for good cause shown." (Emphasis added.)

{¶ 31} Civ.R. 59 allows, rather than mandates, a trial court to grant a new trial: "This rule provides that the trial court may grant a new trial if one of the specifically enumerated grounds exists or if good cause is shown. The rule does not require that the trial court grant a new trial, but, rather, the rule allows the court discretion to grant or not to grant a new trial." *Eagle Am. Ins. Co. v. Frencho* (1996), 111 Ohio App.3d 213, 218, 675 N.E.2d 1312.

{¶ 32} A trial court's decision to overrule a motion for a new trial is reviewed for abuse of discretion. *Mannion v. Sandel* (2001), 91 Ohio St.3d 318, 321, 744 N.E.2d 759. An abuse of discretion in this context connotes that the court's attitude is unreasonable, arbitrary, or unconscionable. *Baker v. Dorion*, 155 Ohio App.3d 560, 2003-Ohio-6834, 802 N.E.2d 176, ¶ 13. In deciding whether to grant a new trial, a trial court should "'abstain from interfering with the verdict unless it is quite clear that the jury has reached a seriously erroneous result.'" *Bland v. Graves* (1993), 85 Ohio App.3d 644, 651, 620 N.E.2d 920, quoting 6A Moore, Federal Practice (1992), Paragraph 59.08[5].

{¶ 33} It should first be noted that appellant's primary argument for requesting a new trial was that the trial court ruled against him in a motion in limine, rather than for events that occurred at trial. "An appellate court need not decide the propriety of an order granting or denying a motion in limine unless the claimed error is preserved by an objection, proffer, or ruling on the record at the proper point during the trial." *Cementech, Inc. v. Fairlawn*, 160 Ohio App.3d 450, 2005-Ohio-1709, 827 N.E.2d 819, ¶ 23. Instead of preserving the objection at trial, appellant tried the opposite approach: he raised the workers' compensation issue first, before appellee had any opportunity to discuss it. Appellant admits on appeal that it was his own counsel's direct examination of his witnesses that first brought up matters involving those prior workers' compensation claims and social security claims. It is also clear that appellant's experts relied on workers' compensation and social security claims prior to giving their opinions at trial. Yet, appellant believes that appellee should not have been permitted to discuss those issues at trial, even though appellant raised them first.

{¶ 34} Obviously, if appellant did not want workers' compensation and social security claims to be discussed at trial, his counsel should not have raised the issue first. Appellee mentioned workers' compensation and social security only through cross-examination. Once a party has "opened the door" to a subject on direct exam, the trial court has wide latitude in allowing cross-examination of the subject matter. *Pearson v. Wasell* (1998), 131 Ohio App.3d 700, 707, 723 N.E.2d 609; *Toledo v. Bernard Ross Family Ltd. Partnership*, 165 Ohio App.3d 557, 2006-Ohio-117, 847 N.E.2d 466, ¶ 90. "[A] reviewing court should be slow to disturb a trial court's determination on the scope of cross-examination * * *."

*Vance v. Vance,* 151 Ohio App.3d 391, 2003-Ohio-310, 784 N.E.2d 172, ¶ 50. It is also clear that Evid.R. 611(B) provides that cross-examination shall be permitted by a trial court with regard to all relevant matters and issues affecting credibility.

{¶ 35} It is difficult to understand how appellant could argue that the prior workers' compensation and social security claims were irrelevant to the present cause of action. He was attempting to recover damages for injuries, including pain and suffering, for an accident that occurred in 2002. His own doctors provided testimony that the type of pain he was experiencing was exactly the same as that which occurred in his prior workers' compensation and social security claims. If appellant had been experiencing the same type of pain since 1989, there would be no basis for a jury to award damages for new pain and suffering from an accident in 2002. It was also highly relevant whether appellant was already partially disabled when the accident occurred in 2002. For example, the prior disability could have limited the types of jobs and activities appellant could undertake, and if he had ignored his disabilities over the years and engaged in inappropriate jobs and activities, then a jury could find that he himself was the proximate cause of his own enhanced injuries. There were no x-rays, MRIs, or other electronic scans of appellant's back taken between 1994 and 2002 to indicate whether the L4–L5 disc ruptured before the 2002 accident. Without any direct means of determining the date of the ruptured disc, the parties were left to rely on expert witnesses and circumstantial evidence, including evidence of the nature of appellant's prior disability, his entire history since that disability, and a comparison of his present physical condition with his condition during prior years. These were the same circumstances surrounding the earlier workers' compensation and social security claims. Thus, those circumstances were highly relevant to the 2002 claim as well.

{¶ 36} The timing of various events during the litigation process also refute appellant's assertion that he properly objected to any reference to workers' compensation or social security claims. Appellant deposed Dr. MacPherson on September 20, 2005. Appellant's counsel also filed his motion in limine regarding the workers' compensation claims on September 20, 2005. Appellee responded to the motion on September 26, 2005, and the trial court ruled on it on September 27, 2005. Neither appellee nor the trial court had time to respond to the motion before the deposition took place, and yet, it is at this deposition that appellant's expert relies extensively on evidence from the workers' compensation and social security claims to support his testimony and conclusions. Dr. MacPherson himself stated that appellant was "disabled for a long time," apparently relying on the workers' compensation disability designation. The deposition record reveals appellant's strategy of preemptively raising and relying on evidence from the workers' compensation and social security claims, while at the same time,

attempting to prevent appellee from discussing anything having to do with those claims and reports. Appellant chose his strategy. Appellant raised the workers' compensation issues during the depositions of both Drs. MacPherson and Baker, and by raising the issue, he had to live with the consequences, including having his witnesses subjected to cross-examination on those issues.

{¶ 37} Appellant's arguments are not persuasive, and the first assignment of error is overruled.

## ASSIGNMENT OF ERROR NO. 2

{¶ 38} "The trial court abused its discretion and committed reversible error in denying appellant's motion for new trial because the verdict of $0.00 was so inadequate, against the manifest weight of the evidence and so gross so as to shock the sense of justice and fairness that the verdict cannot be reconciled with the uncontroverted evidence in the case."

{¶ 39} Here, appellant is again challenging the trial court's decision to overrule the motion for a new trial. Our standard of review as regards abuse of discretion has already been discussed. The wording of appellant's assigned error is somewhat misleading, because he seems to be challenging the amount of the jury award rather than the verdict as a whole. He cannot challenge the amount of the award, though, because the jury did not rule in his favor at all. The jury specifically found that appellee did not proximately cause appellant's injuries. Thus, the potential amount of damages is irrelevant, because appellee is not liable. We will assume for the sake of argument that appellant is challenging the overall verdict, and not simply the dollar value of the verdict.

{¶ 40} Appellant's argument largely depends on his assertion that the expert testimony supporting his claim was unrebutted. Appellant claims that both doctors testified, in their capacity as expert witnesses, that the 2002 accident caused a new injury to the L4–L5 disc. Appellee, on the other hand, cites the record to show that appellant's expert, Dr. MacPherson, did not even feel qualified to give expert evidence of causation. Dr. MacPherson testified: "I take the history. He [appellant] stated he got hurt in the accident. I'm the doctor. I recommended that he see a surgeon and have therapy. The causation, how he— that's—I think that's your ballgame, not necessarily mine." It is not clear that Dr. MacPherson can be treated as an expert witness on the matter of causation because he was not willing to rely on his own ability to discuss causation.

{¶ 41} Dr. Baker also gave less than clear testimony about when and how appellant's injury occurred. He stated:

{¶ 42} "L4–5 has some changes that have occurred in the last eight years [1994–2002], and some of that's degenerative change over the years, and, certain-

ly, that could mean that there's more potential for injury to that nerve because any flexion extension injury has less space to deal with than he did in 1994, so that's showing some differences. And, again, that would probably happened [sic] even without the accident, but certainly the accident will aggravate that because there's less space."

{¶ 43} According to this testimony by Dr. Baker, the degeneration of the L4–L5 disc probably would have occurred even without the accident, but at the same time, was aggravated by the accident. For trial purposes, these two conclusions are contradictory. The doctor is saying that the injury cannot be attributed to the accident because it would have occurred anyway, but on the other hand, was definitely caused by the accident. While our interpretation may be that the accident hastened the degeneration, it is unclear how Dr. Baker could come to any definitive conclusion about the cause of the spinal injury if he truly believed that the injury would have occurred with or without the accident.

{¶ 44} Appellant is correct that appellee did not provide her own separate expert to rebut the testimony of appellant's doctors. There are ways to rebut expert testimony other than by providing a different expert to contradict the testimony. Rebuttal evidence refers to evidence that explains, repels, counteracts, or disproves facts given in evidence by the adverse party. *Nickey v. Brown* (1982), 7 Ohio App.3d 32, 35, 7 OBR 34, 454 N.E.2d 177. Cross-examination may reveal inconsistencies and errors in an expert's testimony, and thus, may qualify as rebuttal evidence. *State v. Thompson* (1987), 33 Ohio St.3d 1, 11, 514 N.E.2d 407. Other nonexpert witnesses may rebut expert testimony and challenge an expert's credibility. *Union Twp. Bd. of Trustees v. Old 74 Corp.* (2000), 137 Ohio App.3d 289, 300, 738 N.E.2d 477. The expert may rebut his or her own testimony. See, e.g., *McCall v. Mareino* (2000), 138 Ohio App.3d 794, 742 N.E.2d 668. Most important, the trier of fact is not required to believe the expert giving the testimony. Id. at 799, 742 N.E.2d 668. The trier of fact is free to believe or disbelieve any witness, including an expert witness. *In re Baby Girl Doe*, 149 Ohio App.3d 717, 735, 2002-Ohio-4470, 778 N.E.2d 1053. In this case, the jury may simply have disbelieved the testimony of the experts: "Once properly before the court, the expert's conclusions became a matter for the trier of fact." *State v. Hartman* (2001), 93 Ohio St.3d 274, 285, 754 N.E.2d 1150.

{¶ 45} In *Sauto v. Nacht,* involving a low-speed automobile accident similar to the facts of this instant case, the jury rendered a verdict in favor of the defense despite there being no rebuttal expert from the plaintiff. *Sauto v. Nacht* (Apr. 16, 1998), 8th Dist. No. 73118, 1998 WL 183812. The trial court denied a motion for a new trial, and the trial court's decision was upheld on appeal, largely for the reason that the jury was not required to believe the plaintiff's expert, or the evidence that the expert relied upon:

{¶ 46} "That evidence is uncontroverted does not necessarily require the trier of fact to accept an argument advanced by a party. Appellant contradicted himself on the extent of his injuries. His testimony at trial was that he had a constant ache in his back which did not seem to ease up or go away. Yet he told Dr. Bilfield his neck pain was gone and that his overall condition had significantly improved. Appellant testified he could no longer drive as a result of the accident but admitted under cross-examination that he continued driving for a year following the accident and stopped after he was diagnosed with lung cancer. On direct, appellant stated that he had never been told he had arthritis in his back until he saw Dr. Bilfield. Appellant chose to discontinue the recommended treatment with a physical therapist after only a few sessions instead opting to do the exercises at home." (Citations omitted.) Id. at *4; see also *Schlundt v. Wank* (Apr. 17, 1997), 8th Dist. No. 70978, 1997 WL 186830; *McCall v. Mareino* (2000), 138 Ohio App.3d 794, 799, 742 N.E.2d 668.

{¶ 47} Appellee's strategy was to discredit the importance of the expert testimony by showing that it was based in large part on appellant's own descriptions and assessments of his symptoms, in much the same way that the *Sauto* evidence was discredited. If appellee could discredit appellant as a witness, this would tend to discredit the basis of the experts' conclusions.

{¶ 48} Quite a few credibility issues arose at trial that undermined appellant's case. It was revealed at trial that appellant did not testify accurately at his deposition about his employment history. During trial, appellant added elements to his employment history regarding jobs that involved heavy lifting. He worked at these jobs supposedly after his first surgery and before the 2002 accident. In deposition testimony, though, he merely said he was unemployed during that time period. Obviously, if he worked at jobs involving heavy manual labor, he could have reinjured his back during that time.

{¶ 49} Appellant did not testify accurately about a second workers' compensation claim in 1993 that involved disabling pain in his leg due to spinal injury. He testified at his deposition that he had completely recovered from his prior back injury before the 2002 accident. Yet, at trial he testified that he had not completely recovered and still had pain. He even stated at trial that he had pain the day before the accident and on the morning of the accident itself, *including pain that went down his leg*. According to appellant's expert, this type of pain was consistent with bulging and herniated discs.

{¶ 50} Appellant's deposition stated that he had received no medical treatment for his back after 1994, but he contradicted this at trial. On cross-examination, appellant admitted that he had told Dr. Blankenship in 1994 of pain in his back and down the leg. In 1995 he told Dr. Richard Glass of low-back pain, leg pain, and numbness in the left leg and foot. Appellant told the doctor he could not

walk 20 feet without developing pain. He told the doctor that the pain had persisted since 1989. In 1996, appellant told Dr. Vukelich that he had constant back pain and numbness in both legs. In 1996, he told Dr. MacPherson of low-back pain going down the leg, that all he could do was lie around, and that he could not work. Dr. MacPherson indicated that the pain had been persistent for many years and told appellant at the time that the pain would continue for several years. Appellant told Dr. Roberts in 1997 of low-back pain radiating into the left leg and numbness in the foot. Once again, this is the type of pain indicative of bulging and herniated spinal discs.

{¶ 51} Appellant admitted on cross-examination that there was no evidence in the record to prove that his back pain ever went away after 1989:

{¶ 52} "Q   And would you agree with me that in all the prior records that you have there's no indication anywhere that the pain ever subsided or went away; is that true?

{¶ 53} "A   Show me.  I guess I'd have to agree.

{¶ 54} "Q   Well, do you know of any?

{¶ 55} "A   No, I do not."

{¶ 56} The jury could have viewed this testimony as undermining appellant's claim.  The jury could have concluded that appellant was trying to hide the seriousness of his back problems after 1994, which includes the very real possibility of L4–5 herniated disc.  Given the long list of inconsistencies, the jury might simply have disbelieved much or all of appellant's testimony concerning the events of the accident, the pain he had suffered prior to or after the accident, or the descriptions of his pain that he gave to his many doctors, particularly the two who provided evidence at trial.  Since the two doctors relied on appellant's statements and credibility as part of their expert opinions, appellant's lack of credibility also could have been interpreted to cast doubt on any or all of their conclusions.

{¶ 57} The inconsistencies between appellant's deposition testimony and his trial testimony go to core elements of appellant's case.  At deposition, appellant's testimony showed that he had recovered from his 1991 surgery, was pain free, and was not treated by doctors after the surgery.  At trial, he painted a completely different picture.  It was revealed that he had many consultations with physicians after his first surgery and regularly reported lower back pain even after the 1994 MRI.  Appellant's credibility was crucial to this case, and the record clearly indicates that the jury could have doubted his credibility and could have doubted the accuracy of appellant's expert witnesses.

{¶ 58} The question on appeal is whether the trial court abused its discretion by overruling the motion for a new trial.  The record indicates that appellant's

expert witnesses were extensively rebutted by their own testimony, and by appellant's testimony. There was no manifest injustice in the jury verdict, and the trial court was within its discretion to uphold the verdict and overrule appellant's motion.

{¶ 59} The record reflects no reversible error in this case, and the judgment of the trial court is affirmed.

Judgment affirmed.

DeGenaro, P.J., and Vukovich, J., concur.