[Cite as *Kranek v. Richards*, 2011-Ohio-6374.]

STATE OF OHIO, JEFFERSON COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| CHRISTIAN KRANEK | ) | CASE NO. 11 JE 2 |
| | ) | |
| PETITIONER-APPELLEE | ) | |
| | ) | |
| VS. | ) | OPINION |
| | ) | |
| SARAH J. RICHARDS | ) | |
| | ) | |
| RESPONDENT-APPELLANT | ) | |

CHARACTER OF PROCEEDINGS:        Civil Appeal from the Court of Common
                                 Pleas of Jefferson County, Ohio
                                 Case No. 10DR227

JUDGMENT:                        Affirmed in part.  Reversed in part.
                                 Remanded.

APPEARANCES:

For Petitioner-Appellee:         Christian Kranek, Pro se
                                 111 Euclid Street
                                 Amsterdam, Ohio  43903

For Respondent-Appellant:        Atty. Peter S. Olivito
                                 606-612 Sinclair Building
                                 Steubenville, Ohio  43952

                                 Atty. Kristopher M. Haught
                                 2021 Sunset Boulevard
                                 Steubenville, Ohio  43952

JUDGES:

Hon. Cheryl L. Waite
Hon. Gene Donofrio
Hon. Joseph J. Vukovich

                                 Dated:  December 7, 2011

[Cite as *Kranek v. Richards*, 2011-Ohio-6374.]

WAITE, P.J.

{1} Appellant Sarah J. Richards appeals the judgment of the Jefferson County Court of Common Pleas which issued a four-year Civil Stalking Protection Order ("CSPO") against her in favor of Appellee Christian Kranek ("Christian"), along with Appellee's wife Nicholette Kranek ("Nicholette"), and three children, C.K.1 (one month old), C.K.2 (one year old), and J.K. (ten years old). Appellant and Christian were talking on the phone about visitation issues regarding their child J.K. when Appellant threatened to kill him and his family. Three weeks later, Christian received a threatening message on his answering machine, and identified Appellant's voice on the recording. A CSPO must be based on a pattern of conduct, and two incidents closely related in time constitutes a pattern of conduct. R.C. 2903.211(D)(1). Even though Christian has not responded to this appeal, the record does not reasonably support reversal. However, the record does reflect that the court told the parties it would dismiss the CSPO with respect to the child J.K., as all custody issues pertaining to that child file was under the jurisdiction of another court. The trial court failed to dismiss as to J.K. Hence, the judgment is partially reversed and the case remanded for the trial court to file a corrected judgment entry removing J.K. from the CSPO.

{2} On August 3, 2010, Christian filed a petition for a CSPO against Appellant. Appellee sought relief for himself, his wife, and three children. The court granted a temporary protection order and set a full hearing for August 20, 2010. Appellant, Christian and Nicholette testified at the hearing. Christian and Nicholette both described the phone call of July 30, 2010. Christian had called Appellant to

discuss visitation issues regarding their child J.K. (Tr., p. 14.) J.K. was speaking to Appellant, but the child became upset and started to cry, then left the room. (Tr., p. 6.) Christian picked up the phone and Nicholette activated the speaker phone feature so that she could hear the conversation. Nicholette heard Appellant say, "I'll kill you and your family." (Tr., p. 6.) Christian heard Appellant say: "I'll kill you and your whole family." (Tr., p. 15.) Christian also heard Appellant say: "You know I'm capable of it and if I can't do it I know someone who will." (Tr., p. 15.)

{3} Approximately 30 minutes after the phone call, a police officer arrived at the house due to a report of child abuse made by Appellant to the Madison County Sheriff's Department. (Tr., p. 8.) The officer found that J.K. was fine, and took a report about the threatening phone call made by Appellant. When Nicholette wrote down what Appellant had said, she left out the word "kill" and wrote: "I'm going to and you and your family." (Tr., p. 9.) She testified in court, though, that Appellant said she was going to kill them.

{4} Christian and Nicholette also testified about a message left on their telephone answering machine on August 19, 2010, in which the caller said: "I'm going to get you. I'm hiding. I'm waiting for you[.]" (Tr., p. 18.) Christian and Nicholette both recognized Appellant's voice leaving this message. (Tr., pp. 11, 18.)

{5} Christian testified that, sometime before J.K.'s birth in 2000, Appellant threw an ashtray at him that left a permanent scar. (Tr., p. 21.) There was also testimony that Appellant displayed a gun to Nicholette during a custody exchange of J.K. (Tr., p. 11.) This incident occurred in a McDonald's restaurant approximately 18

months prior to the death threat in July of 2010. One other incident mentioned in the record is a threat Appellant made to Nicholette: "About a year-and-a-half ago [Appellant] was telling me, you know, I just need to butt out, mind my own business or else she'll kick my butt." (Tr., p. 13.)

{6} During the CSPO hearing, the parties explained to the court that Appellant had permanent custody of J.K. and that Christian had visitation rights. Custody and visitation had initially been decided by the Jefferson County Court of Common Pleas, Juvenile Division. Jurisdiction over the juvenile was then transferred to the Madison County Court of Common Pleas, Juvenile Division, after Appellant moved to that county. The trial judge determined that judicial custody of J.K. fell under the jurisdiction of Madison County and that the CSPO would be dismissed as to J.K. (Tr., pp. 35-36.)

{7} On August 26, 2010, the court filed its judgment entry making the CSPO permanent until August 3, 2014. On September 1, 2010, Appellant filed a request for findings of fact and conclusions of law. On January 5, 2011, the court issued its findings. The court made several findings: that custody, visitation and child support were contested; that Appellant threatened to kill Christian and his family due to the custody dispute; and that Appellant was responsible for multiple threats of physical harm that were designed to cause mental distress in order to influence the outcome of the custody dispute. The court determined that the evidence showed a pattern of threats of physical harm against the persons listed on the CSPO petition.

**{8}** Appellant filed this timely appeal on February 3, 2011. Appellee has not responded to this appeal. According to App.R. 18(C), we "may accept the appellant's statement of the facts and issues as correct and reverse the judgment if appellant's brief reasonably appears to sustain such action."

**{9}** Although Appellant lists four assignments of error, the first three assignments deal with specific facts found by the court and these findings all relate to the fourth assignment of error challenging the manifest weight of the evidence. For these reasons, all the assignments will be treated together.

ASSIGNMENTS OF ERROR 1, 2, 3, AND 4

**{10}** "THE TRIAL COURT ERRED IN FINDING THAT CUSTODY, VISITATION AND SUPPORT ARE CONTESTED.

**{11}** "THE TRIAL COURT ERRED IN FINDING THAT SARAH J. RICHARDS MADE MULTIPLE THREATS OF PHYSICAL HARM DESIGNED TO CAUSE MENTAL DISTRESS IN ORDER TO INDUCE CHRISTIAN KRANEK TO FORGO ANY CUSTODY CHALLENGES.

**{12}** "THE TRIAL COURT ERRED IN FINDING THAT THE CONDUCT OF SARAH J. RICHARDS CONSTITUTES A PATTERN OF THREATS OF PHYSICAL HARM AND CAUSING MENTAL DISTRESS TO CHRISTIAN KRANEK AND THE PERSONS LISTED ON THE PETITION FOR A DOMESTIC STALKING CIVIL PROTECTION ORDER.

{13} "THE TRIAL COURT [SIC] DECISION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND IS NOT SUPPORTED BY COMPETENT, CREDIBLE EVIDENCE."

{14} In this appeal, Appellant is challenging the factual basis of the trial court's judgment. Thus, Appellant's manifest weight of the evidence argument encompasses all issues raised in this appeal. R.C. 2903.214 governs the issuance of a CSPO. The petitioner must demonstrate, by a preponderance of the evidence, that the respondent has engaged in menacing by stalking. *Strausser v. White*, 8th Dist. No. 92091, 2009-Ohio-3597, ¶30  The decision whether to grant a CSPO is within the trial court's sound discretion. See, e.g., *Smith v. Wunsch*, 162 Ohio App.3d 21, 2005-Ohio-3498, 832 N.E.2d 757, ¶10. "The term 'abuse of discretion' connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140. Moreover, "an appellate court may not simply substitute its judgment for that of the trial court so long as there is some competent, credible evidence to support the lower court findings." *State ex rel. Celebrezze v. Environmental Enterprises, Inc.* (1990), 53 Ohio St.3d 147, 154, 559 N.E.2d 1335.

{15} When an appellate court reviews a trial court's judgment, the appellate court must generally defer to the fact-finder's weighing of the evidence credibility determination. See, e.g., *Seasons Coal Co., Inc. v. Cleveland* (1984), 10 Ohio St.3d 77, 81, 461 N.E.2d 1273.

**{16}** Appellant first contends that the trial court made findings and issued rulings over the custody and child support of J.K. that were outside its authority because another court, the Madison County Court of Common Pleas, Juvenile Division, already has jurisdiction over custody matters regarding J.K. Although Appellant does not cite any law to support this contention, she is correct. A standard CSPO contains many sections that potentially relate to parental rights and child custody issues. Sup.R. Form 10.03-F. If a child is protected by the order and a parent is the respondent bound by the order, then most aspects of the CSPO will necessarily affect parental rights in some way. The order may prohibit a parent from having contact with a child, from visiting the child, or from residing with the child. The CSPO may order the parent not to be in the same vehicle with the child, take vacations with the child, or enter the child's school or day care center. Custody and visitation would terminate, as a practical matter, if the order contains the standard provision requiring the respondent to stay 500 feet away from the victim.

**{17}** We recently held that "when the domestic relations court presiding over the [civil protection order] is not the court that has jurisdiction over parental rights and responsibilities, the domestic relations court has no authority to issue orders regarding parental rights or visitation. Every court that has looked at this issue has come to the same conclusion." *McCue v. Marlin*, 187 Ohio App.3d 1, 2010-Ohio-1298, 930 N.E.2d 855, ¶27. "A common pleas court does not have jurisdiction * * * where a juvenile court in the same county has already made a determination of parental rights and responsibilities." *Couch v. Harrison* (Feb. 12, 2001), 12th Dist.

No. CA2000-08-063, *4. "[A] trial court issuing a CPO may temporarily allocate parental rights and responsibilities for the minor children if no other court has previously or is concurrently doing so." *Parker v. Jamison*, 4th Dist. No. 02CA002857, 2003-Ohio-7295, ¶24. Any provisions of a civil protection order that attempt to usurp the final child custody orders of another court cannot be enforced. *McCue*, supra.

**{18}** The trial court in this case recognized that the juvenile court of Madison County had issued custody orders regarding J.K., and thus, the judge notified the parties at the CSPO hearing that J.K. would be removed from the CSPO. The court failed to do this in its judgment entry, and for that reason, the case must be remanded to the trial court to make that correction.

**{19}** The second and third issues raised by Appellant involve the court's finding that she made multiple threats that constituted a pattern of conduct. Appellant does not agree that there were multiple threats involved, here. To review this matter, we must first look to the elements that must be proven to warrant the issuance of a CSPO. R.C. 2903.214 contains the procedure for filing a "petition for protection order." R.C. 2903.214(C) provides:

**{20}** "A person may seek relief under this section for the person, or any parent or adult household member may seek relief under this section on behalf of any other family or household member, by filing a petition with the court. The petition shall contain or state all of the following:

**{21}** "(1) An allegation that the respondent is eighteen years of age or older and *engaged in a violation of section 2903.211 of the Revised Code* against the person to be protected by the protection order or committed a sexually oriented offense against the person to be protected by the protection order, including a description of the nature and extent of the violation;" (Emphasis added.)

**{22}** At the heart of a CSPO is an allegation that the accused committed menacing by stalking as defined by R.C. 2903.211. Before a court may grant a CSPO, a petitioner must demonstrate, by a preponderance of the evidence, that the respondent has engaged in menacing by stalking. *Strausser v. White*, 8th Dist. No. 92091, 2009-Ohio-3597, ¶30; *Caban v. Ransome*, 7th Dist. No. 08MA36, 2009-Ohio-1034, ¶7. Turning, then, to the appropriate statute governing stalking, R.C. 2903.211(A)(1), it provides: "No person by engaging in a pattern of conduct shall knowingly cause another person to believe that the offender will cause physical harm to the other person or cause mental distress to the other person."

**{23}** " 'Pattern of conduct' means two or more actions or incidents closely related in time, whether or not there has been a prior conviction based on any of those actions or incidents." R.C. 2903.211(D)(1). One incident is insufficient to establish a "pattern of conduct." *McKinley v. Kuhn*, 4th Dist. No. 10CA5, 2011-Ohio-134, ¶15; *State v. Scruggs* (2000), 136 Ohio App.3d 631, 737 N.E.2d 574. In determining what constitutes a pattern of conduct for purposes of R.C. 2903.211(D)(1), courts must take every action into consideration "even if some of the person's actions may not, in isolation, seem particularly threatening." *Guthrie v.*

*Long*, 10th Dist. No. 04AP-913, 2005-Ohio-1541, ¶12; *Miller v. Francisco*, 11th Dist. No.2002-L-097, 2003-Ohio-1978, ¶11.

**{24}** The pattern of conduct described in R.C. 2903.211(D)(1) must occur "closely related in time". "R.C. 2903.211 does not attempt to define or give further meaning to the phrase 'closely related in time.' " *State v. Bone*, 10th Dist. No. 05AP-565, 2006-Ohio-3809, ¶24. "Consequently, 'whether the incidents in question were "closely related in time" should be resolved by the trier of fact "considering the evidence in the context of all the circumstances in the case." ' " Id., quoting *State v. Dario* (1995), 106 Ohio App.3d 232, 238, 665 N.E.2d 759. It has been held that "[t]he incidents need not occur within any specific temporal period." *Jenkins v. Jenkins*, 10th Dist. No. 06AP-652, 2007-Ohio-422, ¶18. A period of eight months has been accepted as being closely related in time to support a CSPO. *McKinley*, supra.

**{25}** The CSPO in this case appears to have been based on two main incidents. The first occurred on July 30, 2010. This was the phone call in which Appellant threatened to kill Christian and his family. The second is the phone message from August 19, 2010, in which the caller said: "I'm going to get you. I'm hiding. I'm waiting for you[.]" (Tr., p. 18.) Christian and Nicholette both testified that they heard Appellant's voice leave this message. (Tr., pp. 11, 18.) Although the second incident is not as threatening as Appellant's initial statement that she would kill Christian and his family, it can be seen as shorthand repetition of the initial threat. Since a pattern of conduct can be established with two incidents, the record supports the trial court's findings, and, thus, supports the issuance of the CSPO. Additional

relevant evidence can also be found in the record. Appellant has inflicted bodily harm in the past, as related in the incident in which Appellant threw an ashtray at Appellee that left a permanent scar. Christian and Nicholette were also aware that Appellant had purchased a handgun, and she publicly displayed it to Nicholette during a custody exchange at a McDonald's Restaurant in Zanesville, Ohio. (Tr., p. 11.) Nicholette also testified that Appellant threatened to do her some harm. (Tr., p. 13.) Thus, there appeared to be an extended pattern of threats and violence, culminating in the two instances occurring on July 30 and August 19, 2010. Because these two incidents occurred less than three weeks apart, there can be no question that the two incidents were closely related in time to one another.

{26} At the CSPO hearing, Appellant contradicted the testimony of Christian and Nicholette. She stated that she never made a death threat. (Tr., p. 27.) The court apparently did not believe her version of the events. "The trier of fact is free to believe or disbelieve any witness * * *." *Sims v. Dibler*, 172 Ohio App.3d 486, 2007-Ohio-3035, 875 N.E.2d 965, ¶44. "The trier of fact is free to believe all, part or none of the testimony of each witness." *State v. Jackson* (1993), 86 Ohio App.3d 29, 33, 619 N.E.2d 1135.

{27} Appellant's fourth assignment of error simply restates that she is challenging the manifest weight of the evidence. Since there is some competent, credible evidence that, if believed, supports the trial court's findings, there is nothing unreasonable, arbitrary or unconscionable in its determination that the findings warrant the issuance of a permanent CSPO. While the issuance of this CSPO is

valid, it is apparent from the record that the trial court should have deleted J.K. from the CSPO because jurisdiction of this child fell to the juvenile court of Madison County. Because the trial judge stated on the record that it would dismiss the CSPO as to J.K., the judgment entry should have been so modified.

**{28}** In conclusion, the record supports a pattern of threats made by Appellant against Christian Kranek, Nicholette Kranek, and the three children listed in petition for a CSPO. A pattern may be established with two incidents, and two incidents are clearly proven in the record. The trial court erred, however, in failing to comply with its decision to dismiss the minor child J.K. from the CSPO. The court found that J.K. was under the jurisdiction of the juvenile court of Madison County and announced to the parties in open court that J.K. would be deleted from the CSPO. In light of the trial judge's finding and the fact that Appellee has not filed a brief in this appeal, we partially sustain Appellant's first and fourth assignments of error. The judgment of the trial court is reversed with respect to J.K., and the case is remanded for the trial court to remove J.K. from the CSPO.

Donofrio, J., concurs.

Vukovich, J., concurs.