[Cite as *Harris v. Summers*, 2011-Ohio-6544.]

STATE OF OHIO, COLUMBIANA COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| SHIRLEY HARRIS, | ) | |
| | ) | |
| PLAINTIFF-APPELLANT, | ) | |
| | ) | |
| VS. | ) | CASE NO. 10-CO-27 |
| | ) | |
| RICHARD SUMMERS, | ) | OPINION |
| | ) | |
| DEFENDANT-APPELLEE. | ) | |

CHARACTER OF PROCEEDINGS:     Civil Appeal from Court of Common
Pleas of Columbiana County, Ohio
Case No. 09CV638

JUDGMENT:                                      Affirmed

APPEARANCES:
For Plaintiff-Appellant                      Attorney Gregg A. Rossi
26 Market Street, 8th Floor
P.O. Box 6045
Youngstown, Ohio 44501

For Defendant-Appellee                    Attorney Matthew P. Mullen
158 North Broadway Street
New Philadelphia, Ohio 44663

JUDGES:

Hon. Gene Donofrio
Hon. Joseph J. Vukovich
Hon. Mary DeGenaro

Dated: December 14, 2011

DONOFRIO, J.

{¶1} Plaintiff-appellant, Shirley Harris, appeals from a Columbiana County Common Pleas Court judgment denying her motion for a new trial after a jury verdict in favor of defendant-appellee, Richard Summers.

{¶2} This case arises from a motor vehicle collision that occurred on September 8, 2008. Appellant was traveling north on Route 46 in Columbiana County approaching the intersection between the Oakmont Plaza and the Village Plaza at approximately 25 miles per hour. Meanwhile, appellee was exiting the parking lot of the Village Plaza attempting to cross traffic to enter the Oakmont Plaza.

{¶3} According to appellant, appellee failed to yield the right of way and collided with the right/front of her yellow Volkswagen Beetle. She was not able to hit her brakes. Upon impact, her vehicle was knocked into the turning lane.

{¶4} According to appellee, as he looked left, he saw a yellow vehicle with a right turn signal on. He looked back the other way and started out. The next time he looked, appellant was right in front of him. He slammed on his breaks, and if he could have stopped within another inch he would have missed her. He felt no impact, nor did he recall her car being pushed into the other lane.

{¶5} Later that evening, appellant began feeling some discomfort. The next morning, she woke up at 4 a.m. to go to work when she discovered severe neck and head pain. She went to the hospital later that day, where she was diagnosed with cervical strain/sprain and was fitted with a cervical collar. She was instructed to follow up with a primary care physician, which she did. Appellant treated with a primary care physician and a chiropractor for some time after.

{¶6} Appellant filed a negligence complaint against appellee seeking compensation for the injuries she alleged were caused by the accident. Appellee admitted negligence and the matter proceeded to a jury trial on the issues of proximate cause and damages. Appellee argued at trial that appellant's injuries were not caused by the accident and had existed for some time prior. The jury returned a verdict for appellee and found that appellee's negligence was not the proximate cause of appellant's alleged injuries. The trial court entered judgment accordingly.

{¶7} Appellant filed a motion for new trial asserting that the verdict was not sustained by the evidence. The trial court denied the motion.

{¶8} Appellant filed this timely notice of appeal on August 17, 2010.

{¶9} Appellant raises one assignment of error, which states:

{¶10} "THE TRIAL COURT ABUSED ITS DISCRETION IN DENYING APPELLANT'S MOTION FOR NEW TRIAL AS THE JURY VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

{¶11} Appellant argues that the jury's verdict was against the weight of the evidence. She contends that appellee presented no evidence to contradict the testimony that she suffered a cervical sprain/strain. She points out that both of her treating physicians testified that the accident was the proximate cause of her injury. On the other hand, appellant notes that appellee did not offer a competing expert opinion.

{¶12} A trial court's decision granting or denying a new trial is reviewed for abuse of discretion. *Koch v. Rist* (2000), 89 Ohio St.3d 250, 251. Abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219.

{¶13} Civ.R. 59(A)(6) provides, "A new trial may be granted to all or any of the parties and on all or part of the issues upon any of the following grounds: * * * [t]he judgment is not sustained by the weight of the evidence." Under a motion for a new trial under Civ.R. 59(A)(6), the movant must illustrate that the judgment is not sustained by the weight of the evidence. *Wright v. Kurth* (March 22, 2000), 7th Dist. No. 97-BA-39.

{¶14} Judgments supported by some competent, credible evidence going to all the material elements of the case must not be reversed, as being against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, at the syllabus. See, also, *Gerijo, Inc. v. Fairfield* (1994), 70 Ohio St.3d 223, 226. Reviewing courts must oblige every reasonable presumption in favor

of the lower court's judgment and finding of facts. *Gerijo*, 70 Ohio St.3d at 226, (citing *Seasons Coal Co., Inc. v. Cleveland* [1984], 10 Ohio St.3d 77). In the event the evidence is susceptible to more than one interpretation, we must construe it consistently with the lower court's judgment. Id. In addition, the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts. *Kalain v. Smith* (1986), 25 Ohio St.3d 157, 162.

{¶15} In determining whether the jury's verdict was supported by competent, credible evidence, we must conduct a thorough review of the evidence submitted at trial.

{¶16} Dr. Dominic Conti was appellant's primary care physician. His deposition was read to the jury. Dr. Conti testified that he first saw appellant on September 11, 2008, three days after the accident, in his office. (Conti dep. 11). She complained of pain on the left side of her neck that radiated down into her left arm. (Conti dep.11). Dr. Conti diagnosed appellant as having cervical sprain and strain. (Conti dep.14). He opined to a reasonable degree of medical certainty that the cause was likely the motor vehicle accident. (Conti dep. 14). Dr. Conti told appellant to continue with her anti-inflammatory and muscle relaxant medication. (Conti dep. 14). He also referred her to Dr. John Yerkey, a chiropractor. (Conti dep. 14-15). Dr. Conti stated that he took appellant off work until mid-November because she stated the pain in her neck made her unable to fulfill her cashier duties. (Conti dep. 17). He further testified that a week later, appellant reported that she was having trouble hearing. (Conti dep. 17-18). Appellant told Dr. Conti that this issue had existed prior to the accident but that it seemed to get worse afterwards. (Conti dep. 18).

{¶17} Dr. Conti sent appellant for an MRI. (Conti dep. 22). It showed some degenerative arthritis and canal stenosis, which is also related to arthritis. (Conti dep. 22). He stated that these conditions were not caused by the accident. (Conti dep. 23). Dr. Conti also offered his opinion that the cause of appellant's visit to the emergency room was related to the accident she was involved in the previous day.

(Conti dep. 27-28). He stated that it was common for pain to begin 24 to 48 hours following an accident. (Conti dep. 28).

**{¶18}** On cross examination, Dr. Conti stated he reached his opinion based on information that appellant gave him that she did not have pain before the accident and she did have pain after the accident. (Conti dep. 31). He also agreed that in order for his opinion to be valid, there would have to have been some type of quick body movement caused by the accident. (Conti dep. 32). He further stated that he was not appellant's doctor prior to the accident, so he had no first-hand knowledge of whether she had ever had similar complaints. (Conti dep. 33).

**{¶19}** Dr. Conti further stated that appellant did not disclose any prior history of neck pain to him. (Conti dep. 39). Appellee's counsel showed Dr. Conti appellant's medical records from a 2007 work-related accident that caused her neck and shoulder pain on the left side. (Conti dep. 39-40). Dr. Conti acknowledged that in May 2007, appellant was taking pain medication and muscle relaxers for her cervical spine and that she had an MRI of her cervical spine in June 2007. (Conti dep. 40). He stated that this MRI demonstrated that appellant had the same arthritis in her neck before the accident as she did after. (Conti dep. 41). Dr. Conti also acknowledged a physical therapy intake from June 2007 for appellant where she received treatment for pain on the left side of her neck and shoulder. (Conti dep. 42). He then acknowledged a note that appellant was discharged in July 2007 and that the physical therapy was not successful in relieving appellant's symptoms. (Conti dep. 43).

**{¶20}** Additionally, Dr. Conti testified that he referred appellant to a specialist for the hearing loss she complained of. (Conti dep. 45). The specialist reported back to Dr. Conti that the hearing loss was not a recent onset and that it could be related to noise exposure. (Conti dep. 45-46). He did not report that there was any aggravation due to the accident. (Conti dep. 46).

**{¶21}** Finally, Dr. Conti stated that if appellant testified that she recovered from the 2007 injury prior to the accident, none of the information about that injury

would affect his opinion that she injured her neck in the accident. (Conti dep. 56).

**{¶22}** Dr. Yerkey, appellant's chiropractor, testified next. Dr. Yerkey first saw appellant on September 17, 2008. (Tr. 40). Appellant provided Dr. Yerkey with a health history that reflected that she was in her car when she was struck on the passenger side by another car and was jerked. (Tr. 42). She reported that she had an immediate headache and neck pain that began that evening. (Tr. 42). Dr. Yerkey examined appellant and determined that she had injuries consistent with sprain on the left side to the neck, cervicalgia mild headaches, and upper thoracic sprain/strain all as a direct result of the accident. (Tr. 46). He opined, to a reasonable degree of chiropractic certainty, that the cause of appellant's injuries was the accident as described by appellant. (Tr. 51). Dr. Yerkey found appellant's injuries to be acute in nature, meaning that they were new injuries. (Tr. 68).

**{¶23}** On cross examination, Dr. Yerkey stated that he based his opinion on the history that appellant had not had a prior injury to her neck or shoulder. (Tr. 79). Counsel then showed Dr. Yerkey the same doctor's notes and physical therapist notes that he showed to Dr. Conti regarding appellant's 2007 neck injury and treatment. (Tr. 81-85). Dr. Yerkey stated that appellant had never told him about her prior injury. (Tr. 86-87). Dr. Yerkey agreed that 70 to 90 percent of all strain and sprain injuries are recurrent, that 50 to 85 percent of the patients will experience neck pain one to five years later, and that only 12 percent of those sustaining soft tissue injuries achieve complete recovery more than ten years later. (Tr. 86). However, Dr. Yerkey maintained on redirect examination that his opinion remained the same that appellant's condition was acute based on the accident. (Tr. 97).

**{¶24}** Appellant testified next. She stated that while at work in 2007, some boxes fell and hit her in the head and left shoulder and knocked her to the ground. (Tr. 111-12). She stated that the next day she could not bend her shoulder. (Tr. 112). As a result, appellant stated that she went to the emergency room, her family doctor, and a physical therapist. (Tr. 113). She stated that she went on light duty at work, that the therapy did not help, and eventually she went back to her regular work

duties. (Tr. 113-14). Appellant stated that after a month or two, she did not have any more complaints about neck pain. (Tr. 115).

**{¶25}** As to the accident, appellant stated that she pulled through an intersection, travelling at 25 miles per hour, when appellee came out of a parking lot and struck her car, pushing it into the next lane. (Tr. 121). She stated that at the time, she thought she was fine. (Tr. 124). She drove her car home. (Tr. 125). Appellant testified that her neck began to hurt later that night. (Tr. 126). By 4:00 a.m. when she got up for work, appellant stated that her neck hurt so she called off from work. (Tr. 127-28). She stated that she went to the hospital around 6:30 or 7:30 a.m. (Tr. 128). At the time, appellant stated that her neck and shoulder hurt and she had a bad headache. (Tr. 128-19). She stated that she was treated with a muscle relaxer and a soft collar and was told to follow up with a family doctor. (Tr. 130).

**{¶26}** On cross examination, appellant acknowledged that she told Dr. Yerkey that she did not hit her head in the accident; however, in her deposition, she stated that she hit her head on the window. (Tr. 156-57). Appellee's counsel also showed appellant a copy of her emergency room chart showing that she arrived at 12:54 p.m. as opposed to early in the morning as she had testified. (Tr. 159; Ex. 1). Additionally, at her deposition appellant stated that she sold her Volkswagen after the accident because she was afraid to drive it. (Tr. 166-67). Yet at trial, she stated that she sold it because she could not get her grandson's car seat into it. (Tr. 166-67).

**{¶27}** Finally, appellant testified that the total damage to her car was approximately $1,100. (Tr. 179).

**{¶28}** Officer Marvin Grace was the police officer who responded to the accident. Officer Grace testified that the damage to both vehicles was "minor." (Tr. 183). He further stated that he offered medical assistance, and both parties declined. (Tr. 183-84). Officer Grace stated that he only completed a local incident report as opposed to an OH-1 state traffic crash form report because there were no injuries and both parties declined the OH-1 report. (Tr. 184-85). Officer Grace characterized

the accident as minor. (Tr. 186).

**{¶29}** Appellee was the last witness. He stated that he pulled up to Route 46 from the Oakmont Plaza, noticed a yellow vehicle with a right turn signal on, started to cross the road, and the next thing he knew the yellow car was right in front of him. (Tr. 193). Appellee testified that he slammed on his brakes and if he could have stopped another inch sooner, he would have missed the other car. (Tr. 193). Appellee stated that while the vehicles made contact with each other, he felt no impact. (Tr. 194). He also stated that he was not injured. (Tr. 194). Appellee also testified, contrary to appellant, that appellant's vehicle was not pushed at all. (Tr. 194). The only damage to his car, appellee stated, was a scratched decal. (Tr. 195).

**{¶30}** In the instant case, both of appellant's experts testified that her injuries were proximately caused by the collision. However, upon cross-examination, both admitted that they were unaware of the extent of appellant's prior medical history. Neither was aware that just over a year prior, appellant had complained of pain in the left side of her neck and shoulder after a workplace injury. And Dr. Yerkey agreed that 70 to 90 percent of all strain and sprain injuries are recurrent with only 12 percent of soft tissue injuries achieving complete recovery. Furthermore, after her workplace injury, appellant was sent to physical therapy where the therapy was unsuccessful.

**{¶31}** Moreover, Dr. Conti testified that his opinion was based on what appellant told him during her visit:

**{¶32}** "Q: And the opinions that you gave in terms of, you know, what was caused by the accident, those were essentially based on what the Plaintiff told you when she came into the office, and, that is, that she was in an accident?

**{¶33}** "A. Correct." (Conti dep. 31).

**{¶34}** And appellee presented evidence to discredit appellant's truthfulness by bringing up inconsistencies between her trial testimony and her deposition.

**{¶35}** Appellant is correct that appellee did not offer an expert witness to rebut the testimony of Drs. Conti and Yerkey. But he was not required to do so in order to

discredit their opinions. In a similar case, we pointed out:

**{¶36}** "Appellant is correct that appellee did not provide her own separate expert to rebut the testimony of appellant's doctors. There are ways to rebut expert testimony other than by providing a different expert to contradict the testimony. Rebuttal evidence refers to evidence that explains, repels, counteracts, or disproves facts given in evidence by the adverse party. * * * Cross-examination may reveal inconsistencies and errors in an expert's testimony, and thus, may qualify as rebuttal evidence. * * * Other nonexpert witnesses may rebut expert testimony and challenge an expert's credibility. * * * The expert may rebut his or her own testimony. * * * Most important, the trier of fact is not required to believe the expert giving the testimony. * * * The trier of fact is free to believe or disbelieve any witness, including an expert witness. * * * In this case, the jury may simply have disbelieved the testimony of the experts: 'Once properly before the court, the expert's conclusions became a matter for the trier of fact.'" (Internal citations omitted.) *Sims v. Dibler*, 172 Ohio App.3d 486, 2007-Ohio-3035, at ¶44.

**{¶37}** In this case, the jury likely disbelieved the doctors' opinions that the accident was the proximate cause of appellant's injuries given that appellant had a previous injury to the same area of her body just a year prior to the accident, she did not disclose her previous injury to the doctors, and there was evidence that the accident was minor.

**{¶38}** Here we have a case involving a low-speed automobile accident with minimal damage to the vehicles. The jury rendered a verdict in favor of the defense despite there being no rebuttal expert from the defendant. The jury did not need to accept the argument advanced by appellant. Appellant contradicted herself on the extent of her injuries, her injuries prior to the accident, and other information.

**{¶39}** Finally, appellant argues that at the very least, she should have been compensated for her emergency room-related expenses. Because she went to the hospital the day after the accident, appellant asserts it was clear that these expenses were related to the accident.

{¶40} While appellant did go to the emergency room the day after the accident, she never called a doctor or nurse who treated her at the hospital to testify at trial that the accident was the proximate cause of her injuries. Thus, the jury was left only with Dr. Conti's opinion on this matter, which, as discussed above, was contradicted by appellee.

{¶41} In sum, the trial court did not abuse its discretion in denying appellant's motion for a new trial. While it may be true that appellant suffered injuries, her preexisting condition and her lack of its disclosure called into question whether the accident was the proximate cause.

{¶42} Accordingly, appellant's assignment of error is without merit.

{¶43} For the reasons stated above, the trial court's judgment is hereby affirmed.

Vukovich, J., concurs.

DeGenaro, J., concurs.