[Cite as *Dixon v. O'Brien*, 2013-Ohio-1429.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

CLARK DIXON, et al., )
                                       )      CASE NO. 12 MA 19
      PLAINTIFFS-APPELLANT, )
                                         )
      - VS -                             )      OPINION
                                         )
THOMAS J. O'BRIEN, et al., )
                                         )
      DEFENDANTS-APPELLEES. )

CHARACTER OF PROCEEDINGS:      Civil Appeal from Common Pleas
                                                   Court, Case No. 08 CV 1551.

JUDGMENT:                                 Affirmed.

APPEARANCES:
For Plaintiffs-Appellant:                  Attorney Gregg Rossi
                                                   Rossi & Rossi
                                                   26 Market Street, 8th Floor
                                                   Huntington Bank Bldg.
                                                   P.O. Box 6045
                                                   Youngstown, OH 44501

For Defendants-Appellees:               Attorney Adam Carr
                                                     The Carr Law Office, LLC
                                                   5824 Akron-Cleveland Rd., Suite A
                                                   Hudson, OH 44236

JUDGES:
Hon. Mary DeGenaro
Hon. Gene Donofrio
Hon. Joseph J. Vukovich

Dated: March 25, 2013

[Cite as *Dixon v. O'Brien*, 2013-Ohio-1429.]
DeGenaro, P.J.

{¶1} Plaintiff-Appellant Clark Dixon appeals the judgment of the Mahoning County Court of Common Pleas denying his motions for judgment notwithstanding the verdict and for a new trial, following a jury verdict in favor of Defendant-Appellee, Thomas J. O'Brien, in a negligence action stemming from an automobile accident. On appeal, Dixon takes issue with two evidentiary rulings during trial and claims the court erred by giving a defense verdict form to the jury. Further, he argues that the trial court erred in denying his motion for a new trial and for JNOV.

{¶2} All of Dixon's arguments are meritless. Neither the evidentiary rulings nor providing a defense verdict form to the jury constitutes an abuse of discretion. The trial court properly denied the motion for JNOV as there was sufficient evidence presented at trial so as to create jury questions regarding proximate cause and damages. Finally the trial court did not abuse its discretion in denying the new trial motion as it does not appear the jury lost its way or that the verdict was manifestly unjust. Accordingly, the judgment of the trial court is affirmed.

## Facts and Procedural History

{¶3} On August 20, 2006, a vehicle driven by O'Brien rear-ended a vehicle driven by Dixon, while exiting a gas station parking lot in Columbus. Dixon's daughter Andrea and her friend were back-seat passengers in Dixon's vehicle. Neither vehicle sustained significant damage, the police were not called, and no one involved reported any injuries at the scene. The parties exchanged information and drove to their respective homes, Dixon to Canfield, and O'Brien to a Dayton suburb.

{¶4} On April 15, 2008, Dixon filed suit against O'Brien. The parties stipulated that O'Brien's negligence caused the accident. Damage to Dixon's vehicle was also not an issue. The remaining issues of proximate cause and personal injury damages, specifically involving Dixon's allegations of injury to his neck and right wrist, were tried before a jury with a magistrate presiding. Prior to trial, the parties entered into a stipulation to waive all objections to the decisions of the magistrate. The following evidence was adduced at trial.

{¶5} According to Dixon, his vehicle, a Nissan Xterra, was stopped and preparing

to turn onto a road, when it was struck from behind by O'Brien's vehicle without warning. He stated the impact was "pretty hard," and that his daughter's beverages flew to the front of the truck as a result. His truck moved forward slightly, but was not pushed into the intersection and did not strike any cars in front of it. Other than the mess from the drinks there was no damage to the interior of the vehicle. Dixon had his seatbelt on and the airbags did not deploy. He said his hands were on the steering wheel when his vehicle was struck. Initially, Dixon testified that his body did not hit anything inside the car as a result of the crash. Later, he stated that he jammed both wrists on the steering wheel, which was apparently consistent with what he stated during his deposition. O'Brien testified he was only going about five miles per hour at the time of the crash.

{¶6} The police were not called to the scene. There was some minor damage to the trailer hitch on Dixon's truck. O'Brien's bumper and front fender were damaged. The bumper was bent so that it was up against the front tire, preventing the car from moving forward. A tow motor came from the gas station to pull the bumper from the front tire. However, O'Brien testified that the front bumper was already bent downward before the accident. Both O'Brien and Dixon drove their vehicles home. It is undisputed that neither Dixon, nor his passengers, reported any injuries at the scene. Over objections, O'Brien testified that he was not injured by the accident.

{¶7} During the three-hour drive home to Canfield, Dixon did not feel any pain or discomfort. Later that evening, he said his wrist and neck began to feel sore, but that he did not go to the emergency room. Instead, Dixon presented to his treating chiropractor, Dr. John Esarco, the next day (August 21, 2006). Dixon had treated with Dr. Esarco since 2002 for neck, lower back and other complaints. In fact, Dr. Esarco treated Dixon for low back pain just five days before the accident. Dr. Esarco testified that Dixon's neck problems before the accident were nowhere near the magnitude of those after the accident. However, Dr. Esarco admitted on cross-examination (when confronted with his treatment notes) that Dixon had nine prior visits for neck-related issues between 2003-2006, including an examination in February 2006 for neck pain with severe headaches. He also admitted that the results of range of motion and flexion testing for the cervical

spine (neck) done approximately five months before the accident were similar to test results the day after the accident.

{¶8} The day after the accident, August 21, 2006, Dixon complained to Dr. Esarco of neck pain, headache and wrist pain. Dr. Esarco had x-rays taken of Dixon's cervical spine, and diagnosed several conditions that he believed to be caused by the accident: acute traumatic cervical strain/sprain; inflammation of the muscle tissue of the neck; and cervicocranial syndrome (headaches due to the neck injury). Dr. Esarco began treatments for the neck injury including electro muscle stimulation, ultrasound, a cervical pillow, and chiropractic adjustment, and continued that regimen until February 12, 2007. Dr. Esarco opined, with reasonable chiropractic certainty, that Dixon's neck injury and the resulting treatment were directly related to the motor vehicle accident.

{¶9} With regard to the right wrist, Dr. Esarco diagnosed Dixon with acute traumatic wrist strain/sprain. Dr. Esarco stated he had not treated Dixon for any wrist problems in the past, however his treatment note from August 21, 2006 (the day after the accident), states "wrist not feeling any improvement." Dr. Esarco testified he provided some light treatments for Dixon's wrist. Dr. Albani, Dixon's primary care physician prescribed an anti-inflammatory medication. When the wrist did not improve, Dr. Esarco referred Dixon to Boniface Orthopaedics for further evaluation. Dixon was already treating with that office for ongoing knee problems. In fact, on August 28, 2006, just eight days after the accident, Dixon had an appointment with Dr. James Boniface regarding his knee, yet did not tell Dr. Boniface about the wrist and neck injuries.

{¶10} On September 26, 2006, Dr. Boniface evaluated Dixon's right wrist. He noted that x-rays of the wrist revealed mild degenerative changes, but no fracture. He recommended the use of a wrist brace and four weeks of physical therapy. When Dixon did not respond favorably to the physical therapy, Dr. Boniface ordered an MRI, which was performed on October 28, 2006 and revealed a triangular fibrocartilage complex (TFFC) tear. Dr. Boniface referred Dixon to Dr. Leslie Schwendeman, a hand surgeon.

{¶11} Dr. Schwendeman evaluated Dixon for the first time on November 28, 2006 and recommended casting of the wrist for four weeks, along with anti-inflammatory

medications. After the cast was removed, Dixon reported some continued discomfort and Dr. Schwendeman prescribed more physical therapy. At a follow-up appointment in January 2007, Dr. Schwendeman stated that Dixon's wrist discomfort had decreased, but that he had some crepitus (clicking) in the wrist. When Dr. Schwendeman saw Dixon for the last time on March 20, 2007, Dixon's symptoms were reduced and Dr. Schwendeman did not recommend further treatment at that time. Dr. Schwendeman testified that to a reasonable degree of medical certainty the TFFC tear was caused by the motor vehicle accident.

{¶12} Entered into evidence were billing statements for Drs. Esarco, Schwendeman and Boniface. There was testimony that treatment rendered for the wrist and neck conditions was reasonable and necessary.

{¶13} Dixon testified that the injuries affected his ability to perform daily life activities. However, he did not have to stop working as an electrician since he mainly had a supervisory role. Dixon testified that his wrist still makes a clicking sound. He admitted that he had received no treatment for the wrist injury since March 2007. Dixon also admitted that in January 2007 he presented to Dr. Boniface due to problems with his left knee along with complaints of pain in multiple joints. Dr. Boniface referred Dixon to a rheumatologist for the joint pain, and Dixon admitted he did eventually follow-up with a rheumatologist.

{¶14} After all evidence was presented, a defense verdict form was provided to the jury in addition to the plaintiff verdict form. Dixon objected to the use of a defense verdict form. The jury rendered a verdict in favor of O'Brien. Judgment was entered on the verdict by the magistrate and signed by the magistrate and the trial court. Dixon filed a motion for JNOV or alternatively a motion for a new trial, which was ultimately overruled by the trial court on June 20, 2009.

{¶15} Dixon appealed to this court on July 22, 2009 and in a decision styled *Dixon v. O'Brien*, 7th Dist. No. 09MA123, 2011-Ohio-3399 (*Dixon I*), this court declined to reach the merits of Dixon's assigned errors, holding that the pretrial stipulation the parties made to waive objections to the magistrate's decisions violated Civ.R. 53, which prejudiced

Dixon and required us to reverse and remand the trial court's judgment:

> The trial court's conduct of the proceedings, beginning with its approval of a stipulation that contravened the civil rules, prevented the filing of objections, both following trial and during the new trial/JNOV proceedings. The trial court failed to conduct an independent analysis of the magistrate's decisions since none were filed. Thus, prejudice exists in this case.
>
>     * * *
>
> Accordingly, we hold that paragraphs two and three of the "Stipulation, Waiver and Consent" are unenforceable. We reverse and remand the judgment of the trial court for the magistrate to prepare and file a magistrate's decision regarding the trial, thereby giving Dixon the opportunity to raise objections with regard to the magistrate's conduct of trial, and for the case to thereafter proceed in accordance with all applicable civil rules.

*Dixon I* at ¶33, 35.

{¶16} On remand the magistrate issued a decision recommending that the trial court adopt the jury verdict as the court's final judgment. Dixon filed timely objections to the magistrate's decision. Therein Dixon first asserted that the magistrate erred in giving a defense verdict form to the jury, and that the magistrate erred by permitting O'Brien to testify that he was not injured by the collision, but precluding Dixon from testifying that a passenger in his vehicle was injured. O'Brien filed a brief in opposition to the objections.

{¶17} On September 22, 2011, the trial court issued a judgment entry overruling the objections and adopting the magistrate's decision and entering judgment on the verdict of the jury. That judgment provided, in pertinent part:

> The Court has reviewed the Magistrate's Decision, together with Plaintiff's Objections and Defendants' response thereto. The Court has

reviewed the entire record and the applicable law, and finds that the Plaintiff's Objections to the Magistrate's Decision should be and hereby are overruled as (1) the Magistrate was correct in submitting a Defense Verdict Form to the jury, since the issues of proximate cause and damages were disputed and (2) the Magistrate's rulings on the trial were proper regarding the testimony of both Plaintiff and Defendant. Accordingly, the Court hereby adopts the Magistrate's Decision and the Verdict of the Jury as the Judgment of the Court as follows: * * *"

{¶18} On September 28, 2011, Dixon filed a motion for judgment notwithstanding the verdict or in the alternative for a new trial which O'Brien opposed. On October 18, 2011, the magistrate issued a decision which included findings of fact and conclusions of law overruling the motion. Dixon filed objections, which O'Brien opposed. On January 23, 2012, following an oral hearing on the objections, the trial court adopted the magistrate's decision overruling the JNOV/new trial motion.

### Motion for JNOV and New Trial

{¶19} In his first assignment of error Dixon asserts:

{¶20} "The trial court erred in denying Appellant's motion for new trial and motion for judgment notwithstanding the verdict as the verdict was against the manifest weight of the evidence."

### *JNOV*

{¶21} Dixon argues he is entitled to a judgment notwithstanding the verdict because the jury verdict was against the manifest weight of the evidence. This is not a proper basis for a JNOV motion, which is governed by Civ.R. 50(B):

Whether or not a motion to direct a verdict has been made or overruled and not later than fourteen days after entry of judgment, a party may move to have the verdict and any judgment entered thereon set aside and to have judgment entered in accordance with his motion; or if a verdict was not returned such party, within fourteen days after the jury has been

discharged, may move for judgment in accordance with his motion. A motion for a new trial may be joined with this motion, or a new trial may be prayed for in the alternative. If a verdict was returned, the court may allow the judgment to stand or may reopen the judgment. If the judgment is reopened, the court shall either order a new trial or direct the entry of judgment, but no judgment shall be rendered by the court on the ground that the verdict is against the weight of the evidence. If no verdict was returned the court may direct the entry of judgment or may order a new trial.

**{¶22}** A trial court must grant a motion JNOV if, upon construing the evidence most strongly in favor of the party against whom the motion is directed, it finds that upon any determinative issue reasonable minds could come to but one conclusion based upon the evidence, and that conclusion is adverse to such party. *Nickell v. Gonzalez*, 17 Ohio St.3d 136, 137, 447 N.E.2d 1145 (1985). When performing this analysis a court shall neither weigh the evidence nor evaluate the credibility of witnesses. *Malone v. Courtyard by Marriott L.P.*, 74 Ohio St.3d 440, 445, 659 N.E.2d 1242 (1996). "Rather, the court is confronted solely with a question of law: Was there sufficient material evidence presented at trial on this issue to create a factual question for the jury?" *Id.* A trial court's ruling on a motion for JNOV is reviewed de novo. *Goodyear Tire & Rubber Co. v. Aetna Cas. & Sur. Co.*, 95 Ohio St.3d 512, 2002-Ohio-2842, 769 N.E.2d 835, ¶4.

**{¶23}** Construing the evidence most strongly in favor of O'Brien, there was sufficient evidence presented at trial so as to create jury questions regarding proximate cause and damages. At the time of the incident, Dixon's vehicle was stopped and O'Brien estimated he was only driving about five miles per hour. There were no reported injuries at the scene, the police were not called, Dixon was wearing his seatbelt and the airbags in neither vehicle deployed. Neither vehicle sustained significant damage. Dixon had a long history of chiropractic treatment for neck problems prior to the accident. Dr. Esarco's treatment note on the day after the accident could be interpreted to indicate Dixon suffered from wrist problems prior to the accident. There was evidence that pre-accident

range of motion and flexion test results for Dixon's neck were comparable to the results of post-accident testing. Based on the foregoing, the trial court correctly denied the motion for JNOV.

### *Motion for New Trial*

**{¶24}** Motions for new trial are governed by Civ.R. 59(A) which lists several grounds for ordering a new trial. At issue here is subsection (6) which involves manifest weight; specifically that the judgment is not sustained by the weight of the evidence. A new trial may also be granted in the sound discretion of the court for good cause shown. Civ.R. 59(A). A trial court's decision to overrule a motion for a new trial is reviewed for abuse of discretion. *Mannion v. Sandel*, 91 Ohio St.3d 318, 321, 744 N.E.2d 759 (2001).

**{¶25}** Several procedural matters raised by O'Brien must be discussed before turning to the merits of Dixon's assigned error. First, O'Brien asserts that reversal of the trial court's decision would require a unanimous and not majority vote by this panel since the motion was based upon a manifest weight argument; and the Ohio Constitution provides that "[n]o judgment resulting from a trial by jury shall be reversed on the weight of the evidence except by the concurrence of all three judges hearing the cause." Ohio Constitution, Article IV, Section 3(B)(3).

**{¶26}** O'Brien cites no law in support of his position. In fact, "[t]he review of a trial court's decision as to whether or not to set aside a jury verdict as being against the weight of the evidence is subject to the same abuse-of-discretion standard as for other grounds for a new trial; *an appellate court does not directly view whether the decision was against the weight of the evidence.*" (Emphasis added.) *Striff v. Luke Md. Practitioners, Inc.*, 3d Dist. No. 1-10-15, 2010-Ohio-6261, ¶72, citing *Mannion*, *supra* at 322; and *Walker v. Summa Health Sys.*, 9th Dist. No. 23727, 2008-Ohio-1465, ¶11. Thus, a unanimous vote by the panel is not required to resolve whether the JNOV should have been denied.

**{¶27}** Second, O'Brien asserts that Dixon has waived review of his Civ.R. 59(A)(6) manifest weight argument by failing to raise it in his objections to the magistrate's decision overruling the new trial motion. Dixon counters that he did raise this issue in his objections. Dixon is correct. Although he did not specifically cite to section (A)(6), the

argument following his second objection, which cites to Civ.R. 59(A)(7), asserts: "it is clear the jury lost its way and disregarded the evidence in reaching a result not justified by the evidence in the record. Certainly a new trial is an adequate remedy." This sufficiently raised the manifest weight argument pursuant to Civ.R. 59(A)(6) to preserve appellate review.

**{¶28}** When reviewing a trial court's decision regarding a motion for new trial, "[an appellate court] must defer to the trial court, or in this case the magistrate, who witnessed the testimony first-hand. [*Mannion* at 321]. Thus, in reviewing the trial court's denial of a motion for a new trial based upon a factual question, we construe the evidence in a light most favorable to the trial court's action rather than to the original jury's verdict." *Williams*, *supra*, 2009-Ohio-6162, at ¶25, citing *Jenkins v. Krieger*, 67 Ohio St.2d 314, 320, 423 N.E.2d 856 (1981); *Rohde v. Farmer*, 23 Ohio St.2d 82, 94, 262 N.E.2d 685 (1970).

**{¶29}** Dixon cites to *Hoschar v. Welton,* 7th Dist. No. 06 CO 20, 2007-Ohio-7196 where this court reversed the denial of a motion for a new trial filed after a defense verdict on damages; however, the case is distinguishable. *Hoschar* involved a high-speed impact where the plaintiff was transported to the emergency room from the accident scene. Significantly, the remand was only for a new trial on the limited issue of the damages arising from the plaintiff's emergency transportation and care on the date of the accident. *Id.* at ¶43.

**{¶30}** O'Brien cites several cases in which this court affirmed the trial court's denial of an appellant's new trial motion which appear to be much more on point, namely, *Sims v. Dibler*, 172 Ohio App.3d 486, 2007-Ohio-3035, 875 N.E.2d 965 (7th Dist.); and *Wright v. Kurth*, 7th Dist. No. 97-BA-39, 2000 WL 310411 (Mar. 22, 2000).

**{¶31}** *Sims* also involved a low-speed crash where the plaintiff reported no injuries at the scene and drove himself home. The plaintiff later complained of back injuries from the incident yet had an extensive prior history of back problems. The defendant admitted negligence and the case proceeded to trial on proximate cause and damages. The plaintiff had several experts testify and the defendant did not produce experts of his own. This court noted that the jury was free to disbelieve the testimony of the medical experts.

*Id.* at ¶44 (citing cases). Further, in *Sims*, defense counsel established numerous credibility problems with plaintiff's testimony.

**{¶32}** *Wright* involved an accident at 35 mph where the jury only awarded damages for the plaintiff's emergency room visit. The plaintiff was treated and released from the emergency room with no broken bones and told to follow up with his family physician. Over a year later, the plaintiff began treating with a chiropractor for alleged residual injuries from the accident. The jury declined to award damages for the subsequent treatment. Evidence was presented that the plaintiff had a history of prior neck, back and other injuries similar to the ones he allegedly sustained in the accident. This court noted that "[a]lthough appellant did offer medical testimony in an attempt to establish a direct causal connection between the accident and his alleged injuries, it is still an issue for the jury. * * * It is the duty of the jury to determine whether or not the facts upon which an expert opinion is based have been proven by the greater weight of the evidence." (Citations omitted.) *Id.* at *4.

**{¶33}** This case is similar to *Wright* and *Sims*. This was a low-speed collision; Dixon was stationary and O'Brien's estimated speed was 5 mph. No injuries were reported at the scene and both Dixon and O'Brien were able to drive themselves home. Neither vehicle sustained substantial damage; although O'Brien did have to use the services of a tow motor to pull his front bumper from his front tire, this was because the bumper was already bent before the incident. Dixon had been seeing Dr. Esarco for his neck problems for years prior to the accident; specifically at least eight times for neck complaints from 2005 to 2006 before the incident. And although Dr. Esarco claimed that the prior neck problems were not as severe as the post-collision problems, he admitted that range of motion and flexion test results for Dixon's neck in April 2006 were comparable to results the day after the accident in August 2006.

**{¶34}** Further, although Dixon and Dr. Esarco testified Dixon was not previously treated for wrist problems, Dr. Esarco's treatment note from the day after the accident stating that the "wrist [was] not feeling any improvement" could be interpreted to indicate an on-going wrist issue. In addition, Dixon's testimony about the specific cause of the

wrist injury was inconsistent. Initially, he testified at trial that he did not strike any part of his body on the inside of the vehicle. Later he stated after some prodding from his attorney that he had jammed both wrists on the steering wheel, consistent with his deposition testimony. Further, Dixon did not undergo an MRI of his right wrist until two months after the accident. In addition, about one and a half weeks after the accident, Dixon presented to an orthopedist for treatment of knee problems unrelated to the accident, yet he did not even mention the wrist or neck problems at that time. Finally, Dixon admitted the orthopedist ultimately referred him to a rheumatologist for his multiple joint complaints.

{¶35} Although Dixon presented two experts who opined that the accident proximately caused Dixon's wrist and neck injuries, the jury could have reasonably discounted or disregarded that testimony based upon the totality of the evidence presented at trial, including their testimony. Therefore, the trial court did not abuse its discretion by denying Dixon's motion for new trial. There is no manifest injustice in the jury verdict. Accordingly, Dixon's first assignment of error is meritless.

### Defense Verdict Form

{¶36} In his second assignment of error, Dixon asserts:

{¶37} "The trial court erred in giving a defense verdict form to the jury."

{¶38} At trial, the magistrate gave the jury the usual verdict forms, including separate forms for a plaintiff's verdict and a defense verdict. Dixon argues this was improper because O'Brien admitted negligence, and the proximate cause testimony of Dixon's treating physicians was not rebutted by any defense expert. Dixon cites no law in support of his position, and we could decline to address this error altogether pursuant to App. R. 16(A)(7). *See also Garrett v. Chirchiglia*, 7th Dist. No. 05 MA 41, 2006-Ohio-755, ¶4-6. In the interest of justice we will exercise our discretion to do so.

{¶39} This alleged error is subject to an abuse of discretion standard of review. *McCabe v. Sitar*, 7th Dist. No. 06 BE 39, 2008-Ohio-3242, ¶45-46. An abuse of discretion means more than an error of judgment, but rather that the judgment of the trial court is unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore*, 5 Ohio

St.3d 217, 219, 450 N.E.2d 1140 (1983).

**{¶40}** Providing the jury with a defense verdict form does not constitute an abuse of discretion; rather, it was proper. Despite the admission of negligence by O'Brien, Dixon still bore the burden of proof as to proximate cause and damages at trial. *See Chambers v. St. Mary's School*, 82 Ohio St.3d 563, 565, 697 N.E.2d 198 (1998).

**{¶41}** Further, O'Brien was not required to present expert testimony to rebut the proximate cause opinions of Dixon's experts. Instead O'Brien's trial strategy was to attack the credibility of Dixon and correspondingly, the expert witnesses who relied in part on Dixon's complaints to form their opinions. *See generally Williams*, *supra*, 2009-Ohio-6162, at ¶34. Accordingly, Dixon's second assignment of error is meritless.

## Evidentiary Rulings

**{¶42}** In his third and final assignment of error, Dixon asserts:

**{¶43}** "The trial court erred in allowing Appellee to testify that he was not injured in the motor vehicle collision as his testimony is irrelevant and the trial court erred in precluding Appellant from testifying that his daughter, Andrea Dixon, a passenger in the vehicle, was injured."

**{¶44}** Evidentiary rulings are reviewed for abuse of discretion. *Scatamacchio v. W. Res. Care Sys.*, 161 Ohio App.3d 230, 2005-Ohio-2690, 829 N.E.2d 1247, ¶74 (7th Dist.). A reviewing court should not disturb evidentiary rulings absent an abuse of discretion that has materially prejudiced a party. *Beard v. Meridia Huron Hosp.*, 106 Ohio St.3d 237, 2005-Ohio-4787, 834 N.E.2d 323, ¶20. Dixon takes issue with the fact that the trial court permitted O'Brien to testify about his lack of injury, but precluded Dixon from testifying about whether his daughter, Andrea who was a passenger in Dixon's vehicle, sustained any injuries.

**{¶45}** First, Dixon contends O'Brien's testimony about his lack of injury was irrelevant. "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evid.R. 401. At issue here was whether the accident proximately caused Dixon any injury. The jury had heard

earlier testimony that the collision involved a minor impact that did not affect the operation of Dixon's vehicle, and that neither Dixon nor his passengers reported any injuries at the scene. O'Brien's testimony that he was not injured tended to make it more probable that the accident was minor, which also made it more probable that Dixon suffered no injury. This argument is meritless.

{¶46} Second, Dixon contends the trial court improperly precluded him from testifying about whether his daughter Andrea was injured. O'Brien counters that the trial court properly excluded Andrea's testimony as it was inadmissible hearsay and because its probative value was substantially outweighed by the danger of unfair prejudice, of confusion of the issues and of misleading the jury.

{¶47} The specific question posed to Dixon was: "At any point thereafter, did Andrea ever *complain of* any pain?" At the end of trial, on the record but outside of the presence of the jury, Dixon's counsel proffered that Dixon would have testified that Andrea did complain of pain after the accident and sought treatment. This testimony constitutes hearsay because it is an out of court statement offered in evidence to prove the truth of the matter asserted, specifically that Andrea was injured. Evid.R. 801(C). Hearsay is inadmissible unless it falls under one of the established exceptions. Evid.R 802, and the proffered statement falls under the Evid.R. 803(3) exception which involves, inter alia, a statement of a then-existing physical condition. *See also State v. Peeples*, 7th Dist. No. 07 MA 212, 2009-Ohio-1198, ¶33.

{¶48} The trial court could have reasonably concluded that permitting Dixon to testify about his daughter's later complaints of pain was substantially more prejudicial than probative. *See* Evid.R. 403(A). Dixon had already testified that his daughter reported no symptoms at the scene of the accident. The probative value of testimony regarding his daughter's subsequent complaints of minor pain could confuse the jury in light of the fact that there was no evidence presented that her later pain was proximately caused by the accident. Accordingly, Dixon's third assignment of error is meritless.

{¶49} In conclusion, all of Dixon's arguments of error are meritless. Neither the evidentiary rulings nor providing the jury with a defense verdict form constitute an abuse

of discretion. The trial court properly denied the motion for JNOV as there was sufficient evidence presented at trial so as to create jury questions regarding proximate cause and damages. Further, the trial court did not abuse its discretion by denying the motion for a new trial as the jury did not lose its way nor was the verdict manifestly unjust. Accordingly, the judgment of the trial court is affirmed.

Donofrio, J., concurs.

Vukovich, J., concurs.